# Wm. C. Chambers v. Samuel Livermore and another.

Chambers made a contract with defendants (who were old people) to buy their farm for $11,000, paying $1,000 down and the balance at the end of ten years. By the contract a deed of the premises was to be executed on payment of the $1,000 and a mortgage given for the remainder, with a clause inserted that if he sold off any portion of the land the defendants should release that part from the effect of the mortgage, on receiving a sum proportionate to the quantity so sold.

A bill was filed for the specific performance of this contract. Defendants in their answer claimed that an acre of the said farm, (including certain buildings,) of much greater relative value than the rest, was to be excepted from the contract. Chambers denied this, and the contract contained no such exception. It did not bind Chambers personally, or compel him to purchase the land or pay the purchase money. Chambers paid the $1,000, but defendants refused to give a deed, unless with the reservation of the one acre.

Evidence was introduced before the commissioner tending to show the real understanding respecting said reservation.

CHAMBERS *v.* LIVERMORE.

*Held*, that whether the one acre was to be reserved or not, the contract was too unconscionable to be specifically enforced: That specific performance even of a binding contract was not a matter of right; and a court of equity will refuse it, and leave a party to his remedy at law, if not clearly satisfied that it embodies the real understanding of the parties.

*Held* further, that it was competent by way of defense to a bill for specific performance to show by parol evidence that either by fraud or mistake the contract did not express the real agreement of the parties or the understanding of the defendant.

*Heard May 2d, 3d and 4th. Decided May 14th.*

Appeal in Chancery from Saginaw Circuit.

This was a bill for specific performance. The case was heard in the court below on original and cross bill, answer and proofs.

A decree was rendered for complainant in accordance with the prayer of the bill.

The facts are stated in the opinion.

*Brown* and *James*, for complainant.

1. The Circuit Court properly dismissed the cross bill.

*a.* It does not allege an agreement to reserve an acre of land described with the requisite certainty, and the defect is not cured by the evidence taken in the case.

*b.* Parol evidence of fraud or mistake can not be received to vary a written contract for the purpose of carrying it into effect as varied.— 2 *Lead. Cases in Eq.* 684; 1 *Id.* 741; 1 *Johns. Ch.* 273, 425; 10 *Me.* 80; 19 *Conn.* 63; 14 *Ves.* 519; 17 *Mass.* 303.

2. Courts of equity will decree a specific performance where the contract is in writing, and is certain, and is fair in all its parts, and is for an adequate consideration, and is capable of being performed.— 1 *Story's Eq. Jur.* § 751.

The contract stated in the bill is in writing, is certain, is fair in all its parts, and is capable of being performed. It alleges an agreement to pay $11,000 for the entire farm, which contains by actual survey $28\frac{3}{100}$ acres or $392.43 an acre. The evidence shows the value of the farm to have

been $300 per acre or $8,409. It thus appears that the complainant not only agreed to pay an adequate price, but $2,591 more.

3. The specific performance of the contract is resisted on the alleged ground of a contemporaneous parol agreement, whereby one acre of land, with the buildings thereon, was reserved from the sale; not embodied therein by reason of fraud upon the part of the complainant.

4. Whether such parol agreement between the parties existed or not, there is nothing in the testimony to warrant the conclusion that it was fraudulently excluded from the written agreement.

Where fraud or mistake is set up as a defense to a written contract, clear and unequivocal proof is required to authorize the interference of the court.— 5 *Mich.* 209.

Even if fraud can render a parol agreement admissible in evidence to control a deed, still the fraud should be proved before the agreement is admitted. To prove the fraud by the agreement, and then give effect to the agreement on the ground of the fraud, is obviously reasoning in a vicious circle.— 2 *Lead. Cas. in Eq.* 706, *and cases there cited.*

Upon any possible construction of the testimony of the defendants, as to what transpired when the final contract of the 12th of August was signed — assuming it to be true — it can only show a parol agreement not embodied in the writing, on the faith of a promise by the complainant to perform it.

In the absence of fraud or mistake, parol evidence is inadmissible to vary a written contract, and the weight of authority is in favor of the position, that both at law and in equity the evidence must be such as to show that the contract as executed differs from that, which one or both of the parties intended to execute, and not merely that there were terms or provisions not embodied in the writing,

CHAMBERS v. LIVERMORE.

even where they were omitted on the faith of an under-
standing that it should take effect in the same manner as
if they had actually been inserted.

2, *Lead. Cas. in Eq.* 673 *and* 74, 708 and cases there
cited.— 5 *Vesey,* 722 ; 1 *Barb.* 42 ; 1 *Bro. Ch.* 92 ; 2 *Id.* 219 ;
2 *Johns. Ch.* 74 ; 11 *Paige,* 650 ; 9 *Dana,* 108 ; 5 *Mich.* 218,
210 ; 8 *Id.* 66.

*D. W. Perkins,* for defendants.

1. The court will not grant a specific performance if com-
plainant has been guilty of fraud in obtaining the contract
by misrepresentation or by undue influence.— 17 *Conn.* 1.

*a.* Misrepresentation will form a bar to specific perform-
ance, though the party representing did not know that it
was false.—*Frey on Specific Performance,* §§ 430, 433, 475,
*and note ;* 1 *Story Eq. Juris.* § 193 ; 36 *Barb.* 377.

*b.* If there was a misunderstanding between the parties
as to the terms of the agreement, courts of equity will
not grant specific performance, but in such cases it will
decree a performance, as parties have agreed. — *Frey on
Specific Perform.* §§ 474 *to* 479 *and note, also,* §§ 484 *to*
495, § 500 *and note* 191, § 501 ; 21 *N. Y.* 238 ; 40 *Barb.*
238 ; 13 *Howard,* 57 ; 10 *Paige,* 526.

*c.* Courts of equity will protect old and infirm persons
from the effect of bargains obtained by undue influence.—
1 *Story Eq. Jur.* §§ 234, 235, 336, 221 *to* 242 ; 3 *Lead.
Cas. in Eq.* 127, 128 *and* 129.

The law defines what constitutes fraud.    That by the
term fraud, the legal intent and effect of the acts com-
plained of is meant.    The law has a standard for meas-
uring the intent of parties; and declares an illegal act pre-
judicial to the rights of others, a fraud upon such rights,
although the parties deny all intention of committing a
fraud.—*Har. Ch.* 19.

*d.* Where one makes false statements by means of
which another is induced to enter into a contract, the

right of the latter to have the contract rescinded does not depend upon whether the person knew the statements to be false when he made them or not. The law has regard rather to the effect of the false statements upon the party to whom they are made, than to the actual intent to deceive by the other.—14 *Mich.* 109.

If one person makes a false statement to another who is about dealing with him upon the faith thereof, he shall make it good; or if he makes any representation which has induced the other to act upon it.—*Frey on Specific Performance*, 269 *and note*, 365 *and* 366; 7 *Johns. Ch.* 194.

*e.* The adequacy or inadequacy of price will not be inquired into where the transaction is unaccompanied with fraud. In this case there is no fraud in the sale by defendants. Chambers is informed that the other party "had backed out and would not take the farm."—1 *Story Eq. Jur.* § 345.

COOLEY J.

Complainant filed his bill to compel the specific performance of a contract, bearing date August 12, 1865, by which the defendants agreed to sell to him a small farm of twenty-seven acres and a quarter, more or less, in the city of East Saginaw, for the sum of eleven thousand dollars; one thousand dollars of which was to be paid on or before the first day of November then next, on the payment of which they were to convey the land to him, upon his giving back a mortgage conditioned for the payment of the remaining ten thousand dollars in ten years after date, with interest, with the agreement, however, that if Chambers at any time should wish to convey any part or portion of the premises, the Livermores should cancel the mortgage on such part or portion, on Chambers paying to them such portion of the mortgage as the portion of the land so to be conveyed would bear to the whole

premises; and that Chambers might make as many conveyances of parcels as he chose on these terms. The contract was signed by Chambers, but did not contain any agreement on his part to buy the land, or pay the purchase price, or give any personal obligation with the mortgage for the ten thousand dollars. Chambers averred in the bill that he had made the payment of one thousand dollars, and demanded a deed, which the defendants refused to give.

The defendants, by their answer, admit the making of a verbal contract for the sale of the farm to Livermore, at the price mentioned, but allege that there was to be reserved therefrom one acre, including their dwelling house and other buildings; that the contract was drawn by Chambers himself; that the defendants are aged people, and ignorant of legal business; that said Ermina Livermore, in whom the title to the farm was vested, inquired of Chambers if the reservation of the acre should not be mentioned in the written contract, who replied that it was of no use to do that, as it would be mentioned in the deed, and that would be sufficient; that he had got the contract drawn, and that it was all right; that defendants, relying on this statement, and confiding in Chambers, who claimed to be something of a lawyer, signed the contract; that when the one thousand dollars were paid, they had a deed prepared for Chambers, containing the reservation, which, to their surprise, he refused to accept, because the reservation was inserted; and they set up his fraud in this particular as a defense to specific performance. Many other matters are set out in the pleadings which have no bearing upon the case as it now stands before us, and a recital of them is therefore omitted.

Considerable evidence was taken in the case as bearing on the question of the alleged fraud; and the court below, not finding the fraud established, made a decree in accordance with the prayer of the bill. Among other things,

it appeared from the evidence that the value of the acre which defendants claim was to be reserved was two thousand five hundred dollars, and that if the premises should be divided into city lots for sale, the value of some lots would be two or three times as great as that of others of the same size.

On the argument, we intimated to counsel that, independent of any question of actual fraud or mistake, this contract was so one-sided and unconscionable in its provisions, that a court of equity could not enforce it. As the complainant had not in any way made himself personally liable for the purchase money, and did not undertake to do so in giving a mortgage, he was, in fact, securing by the contract the option to buy the property at any time within ten years, but with the privilege of selling off the most valuable portions in the meantime, securing their release from the mortgage by paying a proportion of the mortgage equal to the proportion which the area of the lot sold bore to the whole purchase, and then abandoning the purchase altogether by the forfeiture of the one thousand dollars paid on receiving a deed. Thus, if he went no further in his sales than to dispose of the acre where the buildings stand, and which was worth two thousand five hundred dollars, he would be entitled to have it released from the mortgage on payment of four hundred dollars or thereabouts, which was the average price of the whole by the acre, and if he abandoned the contract then, he would have sold nearly one-fourth in value of the land, without being compellable to pay therefor any more than the fourteen hundred dollars, or considerably less than one-seventh of the purchase price. It seemed to us that if a party had been able to secure such a contract, even without fraud, he could not properly ask its enforcement in equity.

To this, two answers were made on the part of complainant: *First*, admitting that this consequence might

follow, there was in that fact no sufficient objection to the relief prayed, as inadequacy of consideration was no defense to specific performance. This is true within limited bounds; but the case suggested would not be one of inadequacy of consideration. The consideration for this land, according to the theory of the bill, has been agreed upon between the parties; but in doing so, the relative value of the several parts has, of course, been taken into account; and the difficulty is that the purchaser, under this contract, may acquire the benefit of the purchase as to those valuable portions on accounting for a portion only of what was the real purchase price of such portions.

*Second,* the complainant says he is willing, and offers in court to waive the unjust provisions made for his benefit, and to bind himself personally for the payment of the purchase price. But he is willing to do this only on condition that the court finds the actual contract between the parties to be as set forth in the bill, and to embrace the acre where the buildings stand.

We are relieved in this case from a consideration of the general question, whether the vendee, in an unconscionable contract, is entitled to have it enforced in equity on waiving the unjust provisions, since the evidence does not satisfy us that the contract agreed upon between the parties is that set forth in the bill. The evidence tends very strongly, if not conclusively, to show that the defendants never understood their contract of sale to embrace the acre on which the buildings are situated; and whether the omission to reserve it arose from fraud in the complainant, or mistake on their part, is immaterial on the question of the specific relief here prayed.

Specific performance, even of a binding contract, is not a matter of right; and a court of equity will refuse it, and turn the complainant over to his remedy at law, if not clearly satisfied that it embodies the real understanding of the parties. The evidence of the defendants is full,

positive and circumstantial, that the reservation alleged in their answer was agreed to be made. The evidence of other persons who were at the same time negotiating with defendants, and bidding, as it were, against complainant for the land, tends strongly to support that of the defendants as to their understanding, inasmuch as it shows clearly that in their negotiations with the witnesses, it was expressly understood the acre with the buildings on, was to be reserved. The evidence of Chambers is distinctly opposed to that of the defendants, but the other evidence in the case tends to support the defense. And the clause respecting releases, which is inserted in the contract, is an important circumstance in the same direction, since it is incredible that persons competent to enter into a contract would have executed one containing that clause, if it covered the part where the buildings are situated.

Complainant, however, insists that all the parol proof introduced to show that the reservation was agreed upon as alleged in the answer, was incompetent. This objection is untenable. Without now approaching the mooted question, whether a complainant can be allowed to show by parol a mistake in a contract, with a view to having it reformed and then enforced, it is sufficient for us to say there is no dispute in the authorities that the mistake may be shown by parol, as a defense to the specific performance of the written instrument.—*See* 1 *Lead. Cas. in Eq.* 519, (*marg.*) *note, and cases cited.*

Complainant also insists that defendants are not defrauded, even if the reservation was agreed to be inserted, inasmuch as the evidence shows that the value of the whole land, at the date of the contract, was less than eleven thousand dollars. We think this position must have been taken without much consideration. It cannot, surely, be seriously urged that if a contract by fraud or mistake is made to include more than the vendor agreed to sell, it

may be enforced against him in equity, if the average esti-
mate of witnesses makes the value of the property no more
than was to be paid. The vendor has a right to put his
own price upon his property, instead of having it fixed
for him by witnesses. An inquiry into the value may be
important in determining whether fraud or mistake has
actually intervened; but the legal character of the trans-
action does not depend upon the question of its sufficiency.
We are not satisfied, however, that the market value of
the land was not more than complainant claims. Assuming
the reserved acre to be worth two thousand five hundred
dollars, defendants had a bona fide offer for the remainder,
of a sum which would have made the whole more than
complainant was to pay; and this offer, so far as the evi-
dence discloses, was on the basis of a cash payment, and
therefore more advantageous than that of complainant, if
his theory of his bargain is correct.

Not being satisfied that any such contract was ever
agreed upon between the parties as is set up in the bill,
and without passing upon the question of actual fraud, we
can not decree specific performance of the contract, not-
withstanding the proposed concessions of the complainant.

The decree of the court below must be reversed, with
costs, and the bill dismissed.

CHRISTIANCY and CAMPBELL JJ. concurred.

MARTIN Ch. J. I concur in the result.