DWIGHT NIMS AND FREDERICK A. NIMS v. SEWELL S. VAUGHN.

*Specific performance.*

Stipulations not actually made and to which the parties might not have assented, cannot be imported into a contract, however equitable they may be.

Where a demand for specific performance has once been made and refused, it is not necessary to repeat it under similar circumstances before suing to compel it.

A decree in chancery is no bar to a suit that does not involve the same questions, even though they might have been brought into the first case by a cross-bill, but were not.

Specific performance will not be refused as inequitable because of the fluctuation of values, where the court has no means of knowing what bearing the terms of the contract had on the negotiations of the parties.

Appeal from Kent. Submitted January 22. Decided January 31.

SPECIFIC PERFORMANCE. Defendant appeals.

*Smith, Nims & Erwin* for complainant. Change of

values will not be considered by a court in enforcing a contract fairly made, *Low v. Treadwell*, 12 Me., 452; *Morrison v. Peay*, 21 Ark., 110; specific performance of a fair and unambiguous contract is a matter of course (*Hawralty v. Warren*, 18 N. J. Eq., 124), and it need not have been signed by the party seeking enforcement, *White v. Schuyler*, 31 How. Pr., 38; *Justice v. Lang*, 42 N. Y., 493; *Butler v. Thomson*, 92 U. S., 412; *Green v. Richards*, 23 N. J. Eq., 32; *Rogers v. Saunders*, 16 Me., 92.

*S. A. Kennedy* for defendant. Specific performance will not be decreed where the agreement is merely voluntary (*Shepherd v. Shepherd*, 1 Md. Ch., 244; *Vasser v. Vasser*, 23 Miss., 378; *Holland v. Hensley*, 4 Ia., 222; *Buford v. McKee*, 1 Dana (Ky.), 107; *Darlington v. McCoole*, 1 Leigh (Va.), 40; *Parker v. Stephens*, 3 A. K. Marsh., 197) or where no consideration is recited (*Short v. Price*, 17 Tex., 397; *Tumlinson v. York*, 20 Tex., 694; *Mercer v. Stark*, 1 Miss., 451) or where it lacks mutuality or is unfair (*Lear v. Chouteau*, 23 Ill., 39; *Andrews v. Andrews*, 28 Ala., 432; *Henderson v. Hays*, 2 Watts, 148; *Smith v. Wood*, 12 Wis., 382; *Huntington v. Rogers*, 9 Ohio St., 511; *Seymour v. Delancey*, 6 Johns. Ch., 222), or where it would cause peculiar hardship to defendant (*Perkins v. Wright*, 3 Har. & M. [Md.], 324), or where it would not be strictly equitable, *Backus' Appeal*, 58 Penn. St., 186; *Canterbury Aqueduct Co. v. Ensworth*, 22 Conn., 608; *King v. Hamilton*, 4 Pet., 311; *McNeil v. Magee*, 5 Mas., 244; *Cabeen v. Gordon*, 1 Hill (S. C.) Ch., 51; *Webb v. Alton Ins. Co.*, 5 Gilm., 223; there is no difference between a contract that is unreasonable when made and one which becomes so afterwards, if the applicant for specific performance is at fault, *Garnett v. Macon*, 6 Call (Va.), 308; *Pigg v. Corder*, 12 Leigh, 69; insolvency and inadequacy of security is a good defense against a decree for specific performance, *Crosbie v. Tooke*, 1 Myl. & K., 431; *Price v. Ashheton*, 1 Y. & C. Exch., 441; *Wil-*

*lingham v. Joyce,* 3 Ves., 168; *Buckland v. Hall,* 8 Ves., 92; one who seeks specific performance must show that he has performed or offered to perform on his part, Frye on Spec. Perf., 365; *Colson v. Thompson,* 2 Wheat., 336; *Hoen v. Simmons,* 1 Cal., 119; *Slaughter v. Harris,* 1 Ind., 238; *Bates v. Wheeler,* 1 Scam., 54; *Ely v. McKay,* 12 Allen, 323; *Doyle v. Teas,* 4 Scam., 202; *Scott v. Shepherd,* 3 Gilm., 483; *Supervisors v. Henneberry,* 41 Ill., 179; *Tyson v. Watts,* 1 Md. Ch., 13.

COOLEY, J. In June, 1874, Dwight Nims and Ann, his wife, gave to the defendant Vaughn a mortgage on six acres of land platted into city lots in Grand Rapids to secure the payment of $4,400 in two years, with ten per centum interest. The sum named in the mortgage was made up of about $4,000 money loaned and about $400 expenses and services in examining title, etc. In the course of the negotiation, but at precisely what stage is in dispute between the parties, Vaughn signed and delivered to Nims the following paper:

"Whereas, Dwight Nims and Ann W. Nims, his wife, has this day executed a mortgage to me upon a certain six acre parcel of land in the county of Kent, in which said mortgage it is provided that in case they shall sell any part of the said six acres and shall turn over to me satisfactory security in lieu thereof, that I shall release the parcel so sold from the lien of said mortgage. Now, therefore, it is further agreed that the first three city lots which they may sell out of said six acres, I will release the said lien thereof without the turning over of security, as in said mortgage provided, and without any additional security. Dated Jackson, Mich., June 27th, A. D. 1874."

It is claimed by Vaughn that the promise contained in this paper was wholly a voluntary promise on his part, and therefore not binding upon him, while Nims claims, and has shown to our satisfaction, that it was executed and delivered as a part of the principal transaction of making a loan and giving security. The estimated value of the six acres at that time was more than double the amount of the mortgage, and it is not proba-

ble that Vaughn supposed he was endangering his security by giving the promise above recited.

Nims did not pay the first instalment of interest, and in July, 1875, Vaughn commenced proceedings to foreclose the equity of redemption. In September, 1875, Nims, as he believed, negotiated a sale of three city lots of the six acres to one Brown, conditional on obtaining a release from the Vaughn mortgage, but Vaughn, on being applied to, refused to release. For this refusal Vaughn seems to have assigned two reasons: *first*, that Nims had made no payment on the mortgage; and *second*, that Nims was then interposing the defense of usury in the foreclosure suit. As neither of these would have been a valid excuse under the agreement, the refusal may be regarded as absolute. In June, 1876, Nims sold and conveyed the same lots to his son Frederick A. Nims, his co-complainant in this suit, for a consideration of $600. Vaughn obtained decree for foreclosure in December, 1876, which was appealed to and affirmed in this court. *Vaughn v. Nims*, 36 Mich., 297. The present suit was then commenced.

The purpose of this suit is to compel Vaughn to release the three lots conveyed to Frederick A. Nims in accordance with his written contract. The circuit court decreed a release. Vaughn has appealed. Besides insisting that his promise was *nudum pactum*, he claims *first*, that the decree is in violation of the spirit of the agreement, which was only to release to actual purchasers contemplating settlement and improvement whereby his security would be improved; *second*, that Vaughn was not requested to release before suit was brought, and therefore should not be compelled to do so; *third*, that the decree in the foreclosure suit is a bar to this; and *fourth*, that the bill is one for the specific performance of a contract, and its prayer ought to be refused, not only because Nims has not performed on his part, but because the agreement itself is unequal and unfair. *Chambers v. Livermore*, 15 Mich., 381. Some minor objections to the

decree are also made which we do not think require special notice.

I. It is highly probable that the parties contemplated that all sales made from the land would tend to increase the value of the remainder, and also that Nims would pay upon the mortgage what he should receive on sales; but Vaughn did not stipulate for this, and we cannot say that the principal transaction would ever have taken place had this agreement not been given substantially in the form in which we now find it. We cannot now import into the agreement new terms to which when making it the parties might not have assented. And the fact that Vaughn required further security in case of additional sales, but not in case of sale of the first three lots, is cogent evidence that the parties deliberately framed their stipulations as we now find them. In conscience Nims ought to have paid over to Vaughn whatever he might have received on the first sales, but Vaughn saw fit to trust to his honor, and we must leave him to that reliance.

II. If Vaughn refused absolutely to release at the time of the negotiation with Brown, assigning no reason that did not exist afterwards when conveyance was made to Frederick A. Nims, we do not think a further demand was necessary when that conveyance was made. Frederick A. Nims had no reason to expect that the demand, if made, would be complied with, and under the circumstances was excused for not making it.

III. The questions now in issue were not involved in the foreclosure suit, though doubtless they might have been brought before the court by cross-bill. The fact of that suit has therefore no importance in this case.

IV. Whether or not the contract was unequal and therefore unjust, we have no means of determining because we cannot know exactly what importance it had in the negotiations of the parties, nor how much Nims may have conceded to obtain it. The evidence in the case shows very plainly that if enforced now it will ope-

rate severely upon Vaughn, for since 1874, while the debt of Vaughn has been steadily increasing, the value of the land has been steadily diminishing, and it is conceded that the mortgagor is irresponsible, and that nothing beyond the land can be obtained in enforcing the securities. But this is a risk that the mortgagee took when taking the papers; he drove what seemed to be a somewhat hard bargain at the outset, and cannot have his contract reformed to relieve him from an unexpected hardship attributable to general business depression. The contract must be construed and enforced precisely as it would have been if the value of the land had increased instead of diminishing.

The real case in controversy seems to be this: A mortgagee has taken security upon several lots of land which apparently are more than sufficient to protect him, but has agreed with the mortgagor, as a part of the transaction, that the latter may withdraw from the lien the first three of the lots he may have an opportunity to dispose of. Afterwards the mortgagee refuses to perform his agreement, insisting upon its invalidity, and upon various excuses, none of which has force. We see no alternative but to hold him to his agreement; and as the circuit court has done so, the decree will be affirmed with costs.

The other Justices concurred.