JOHN F. RUST, ORRIN J. DAVID ET AL. v. CHARLES F. CONRAD ET AL.

*Specific performance—Lease—Revocation of license.*

The specific performance of contracts is not a matter of right, but rests in the sound discretion of the court.

If the contract is unequal; if the consideration is inadequate; if it contains unreasonable provisions, or if ·there are indications of overreaching or unfairness, a court of equity will refuse to interfere for specific performance, and leave the party to his remedy at law.

If the case is one in which either the provisions of the contract or the law would permit to a party the option to nullify a decree for specific performance, should one be granted, the court will not do a vain thing by granting one.

Where therefore a contract for a lease contained a provision that the lease, when given, might at any time be terminated by the lessees, either as to the whole of the land or a part thereof, on giving thirty days' notice; *held*, that this option is a conclusive answer to a bill by those who would be lessees, for the specific performance of the contract.

A licence to two or more is in general revoked by the death of one of the licensees. Whether such would be the rule under the peculiar facts of this case, *quære.*

Appeal from Marquette. Submitted January 5. Decided January 18.

BILL for specific performance. Defendant Conrad appeals. Reversed; bill dismissed.

*F. O. Clark* and *John A. Edget* for complainant. An optional agreement to convey, or to renew a lease without any covenant or obligation to purchase or accept, and without any mutuality of remedy, will be enforced in equity if made upon proper consideration or if it forms part of a lease or other contract between the parties that may be the true consideration for it: Waterman Spec. Perf. § 200; *Seton v. Slade* 7

Ves. 265; *Fowle v. Freeman* 9 Ves. 351; *Clason v. Bailey* 14 Johns. 484; *In re Hunter* 1 Edw. Ch. 1; *Hawralty v. Warren* 18 N. J. Eq. 124; *Hall v. Center* 40 Cal. 63; *Clark v. Clark* 49 Cal. 586; *Schroeder v. Gemeinder* 10 Nev. 355; a contract for the sale of real estate, at the vendee's option, but upon election and notice, may not only be specifically enforced, but the vendor's refusal to accept the purchase money will not destroy the mutuality though the vendee could thereupon withdraw his election: *Corson v. Mulvany* 49 Penn. St. 88; *Bost. & Me. R. R. v. Barlett* 3 Cush. 224; the mutuality and consideration consist in the vendee's having done, on the vendor's promise, what he required, whether he previously undertook to, or not: *Perkins v. Hadsell* 50 Ill. 216; *Kerr v. Purdy* 50 Barb. 24: 51 N. Y. 629; *Kerr v. Day* 14 Penn. St. 112; *Willard v. Tayloe* 8 Wall. 557; *Napier v. Darlington* 70 Penn. St. 64; *Farwell v. Lowther* 78 Ill. 252; *Esmay v. Groton* 18 Ill. 484.

*Albert Crane* for defendant Conrad. Parties to a contract cannot invoke the jurisdiction of the court to compel its specific performance if they are not bound by it themselves: *Bromley v. Jefferies* (1700) 2 Vern. 415; *Lawrenson v. Butler* (1802) 1 Sch. & Lef. 13; *Boucher v. Van Buskirk* (1820) 2 A. K. Marsh. 343; *McMurtrie v. Bennette* (1839) 1 Harr. Ch. 124; *Hawley v. Sheldon* (1840) id. 420; *Geiger v. Green* (1846) 4 Gill 472; *Tyson v. Watts* (1848) 7 Gill 124; *Duvall v. Myers* (1850) 2 Md. Ch. 401; *Rider v. Gray* (1855) 10 Md. 282; *Gelston v. Sigmund* (1867) 27 Md. 334; *Chambers v. Livermore* (1867) 15 Mich. 381: *Richmond v. Dubuque etc. R. R.* (1871) 33 Ia. 422; *Luse v. Deitz* (1877) 46 Ia. 205; *Maynard v. Brown* (1879) 41 Mich. 298; nor if it permits them to revoke it: *Marble Co. v. Ripley* (1870) 10 Wall. 339.

COOLEY, J. This is a bill for the specific performance of what is called in the mining districts a contract of option.

The contract bears date July 1, 1880, and is given in full in the margin.*

David W. Rust, one of the contracting parties, died intestate October 4, 1880, and when administrators were appointed they united with the heirs-at-law in transferring the interest of the estate to John F. Rust, Ezra Rust and George M. Stevens, and the assignees join with John J. McTavish, Myron E. David and Orrin J. David in filing the bill. The complainants allege the full performance on their part of all that was required to entitle them to exercise their option and demand a lease, and they also aver that they elected to take a lease, and demanded it December 3, 1880.

---

* This memorandum of agreement, made and entered into this first day of July, A. D. 1880, between Charles F. Conrad, Arnold McIntire, and P. Parsons Chase, of Washtenaw county, and Myron E. David and Orrin J. David, of the county of Wayne, and all of the State of Michigan, parties of the first part, and a copartnership known as David W. Rust & Company, composed of David W. Rust, George Rust, John J. McTavish, of the county of Saginaw, and Myron E. David and Orrin J. David, of the county of Wayne, and all of the state of Michigan, parties of the second part:

Witnesseth, that whereas said parties of the second part are desirous of exploring for iron ore on the north-east quarter of section three, and the south-east quarter of south-west quarter of section seven, and the north-east quarter of north-west quarter of section eighteen, in town forty-seven (47) north, of range twenty-eight (28) west:

Now, therefore, said first parties, for and in consideration of said explorations to be done by said second parties, hereby grant and give to said second parties the right of entering upon said lands and exploring for iron ore until the first day of January, 1881, if work exploring said lands shall be continued to that time; and if ore of quality and quantity is found on said lands sufficient for mining, then on or before the expiration of this agreement, at the request of said second parties. said first parties, their heirs or assigns, agree to execute a lease of said lands to said second parties, their heirs and assigns, for mining purposes. Said lease, if given, shall be substantially as follows:

*First.* Said lease shall be for twenty years from and after the first day of July 1880, and drawn so as to give David W. Rust two-fifths, ($\frac{2}{5}$) George Rust one-fifth, ($\frac{1}{5}$) John J. McTavish one-fifth ($\frac{1}{5}$) and Myron E. David and Orrin J. David one-tenth ($\frac{1}{10}$) each interest in said lands.

*Second.* Royalty to be paid by second parties to first parties shall be thirty-five cents (35c.) per ton (of 2240 pounds) for all hard ore mined and shipped, and twenty-five cents (25c.) per ton for all soft hematite ore mined and shipped from said lands.

*Third.* Second parties to pay all taxes upon said lands, both general and specific, during the life of this lease.

*Fourth.* Railroad reports of the road over which ore shall be shipped shall be *prima facie* evidence of the number of tons shipped by second parties.

*Fifth.* Payments of royalty for ore so mined and shipped shall be due and payable on the first days of July and January in each year.

The defendants admit the making of the contract and the demand of the lease, but they deny the performance by complainants of the conditions precedent. They also rely upon two principles of law as constituting a complete bar to the relief claimed. These principles may be stated as follows:

1. The contract of option was a mere license to David W. Rust and his associates, and as such was personal and not assignable, and when David W. Rust deceased, the license was by implication of law revoked.

2. The contract was not such an one as a court of equity will specifically enforce. By its terms the lease to be given

*Sixth.* Said royalty shall be paid within sixty days after it shall become due and payable, and upon failure to pay said royalty or taxes in said time, said lease may be terminated by giving thirty days' written notice to the second parties. Second parties may terminate said lease at any time by giving thirty days' written notice to first parties of their intention to do so.

*Seventh.* It is agreed that, upon the termination of this option, or of said lease, whether by the acts of the parties, or either of them, or by limitation, the parties of the second part, their heirs or assigns, shall have sixty days in which to remove all engines, tools, machinery, railroad tracks, buildings, and structures erected or placed by said parties on said lands, but shall not remove or impair any pillar for ore support placed in the mines, or any timber or frame-work necessary to the use and maintenance of shafts or other approaches to the mines, or any tramways within the mines, said mines to be kept and left in as good condition as the circumstances will permit.

*Eighth.* The parties of the second part covenant that during the period for which said lease shall continue in force, after the first year, there shall be mined and removed from said lands at least five thousand tons of iron ore within one year from the first day of January, one thousand eight hundred and eighty-one, (1881,) from each eighty acres included in said lease, and crossing the iron belt from north to south, provided said amount can be mined and removed at a reasonable profit, and in case the said second parties shall not remove from said lands the quantity of iron ore per annum as herein stipulated, and subject to the conditions hereby expressed, commencing with the time specified, the said parties of the second part shall nevertheless pay to the parties of the first part a royalty of thirty-five cents (35c.) per ton, upon five thousand tons per annum up to and until this lease shall expire, which should have been mined from each of said eighty acres as above set forth:

Provided, however, that if in any one or more years more iron ore is thus paid for than is actually mined and removed in such year or years, then and in such case the iron ore thus paid for and not removed may be removed in the next subsequent year during the continuance of this lease without other payments therefor, but such ore so permitted to be removed in any subsequent year from each eighty acres in consideration of such pre-payment must be in excess of the stipulated five thousand tons agreed to be anually taken from each eighty acres of land under said lease

under it might at any time be terminated by the lessees, as to the whole land or any part of it not less than eighty acres, on their giving thirty days' notice of intention so to do. The continuance of the lease, if one should be given, would therefore depend on the will of the lessees, who might immediately elect to terminate it. The contract therefore lacks mutuality and equality; and not being mutual or equal, lacks equity; and for that reason should not be enforced.

The first of these, as a general principle, is no doubt sound. Its application to this case might perhaps be disputed by complainants upon the ground that although the contract was with David W. Rust and his associates only, yet it provided for a lease that should be assignable. Whether they would be correct in this we shall not inquire,

---

*Ninth.* All buildings and machinery of second parties to be held by first parties as security for any rents, royalties, or other indebtedness due said first parties by second parties, and said machinery may be used by first parties if so desired to keep the mine or mines free from water, or worked until all arrears are paid in full, and such buildings and machinery removed so as not to obstruct work or the replacing of others in their stead upon the termination of said lease, either by the acts of the parties or by limitation.

*Tenth.* Said Conrad, one of the parties of the first part, shall have the right to furnish railroad carriage on all ore mined on condition that he shall deliver the same to the ports of Lake Superior, or some port accessible to Green Bay or Lake Michigan, at as low rates as any other person or corporation.

*Eleventh.* Said second parties to commence explorations at once and prosecute the same with reasonable vigor, and in a business-like manner, and failure on their part so to do shall terminate this agreement.

*Twelfth.* Said second parties shall have the right, upon the first day of January, one thousand eight hundred and eighty-one; or at any previous time, to elect to take a lease of the whole of said land as mentioned in this option, at the rates above mentioned and for the time mentioned herein, or they may take a lease for any one or more eighty acres of land mentioned above, for the time mentioned above, except said sections seven (7) and eighteen, (18,) it being hereby understood that, provided all said descriptions shall be surrendered by said second parties, except said sections seven (7) and eighteen, (18,) a royalty shall be paid on said sections seven and eighteen of forty cents per ton, instead of thirty-five cents, as above stated, and may surrender any eighty acres of land which they may not desire to have included in said lease, and take a lease of the balance, or after the execution of said lease, second parties may surrender any portion of said land to first parties not less than eighty acres, upon paying in full all royalty and taxes due upon the same, and giving thirty days' notice to first parties of intention to so surrender.

[Signed and sealed by the parties.]

for the reason that it is unnecessary in this case, which must be governed by other considerations.

When a party to a contract appeals to a court for its specific performance, he addresses himself to the judicial discretion. The relief he asks is altogether exceptional, for the general rule is that the party who complains that another has failed to fulfil his engagements, is supposed to have adequate redress at law in recovery of damages. The court may therefore refuse to grant specific performance in any case where in its judgment equity does not require it. *McMurtrie v. Bennette* Har. Ch. 124; *Smith v. Lawrence* 15 Mich. 499; *Blanchard v. Detroit etc. R. R. Co.* 31 Mich. 43; *Berry v. Whitney* 40 Mich. 65; *Willard v. Tayloe* 8 Wall. 557; *Williams v. Williams* 50 Wis. 311; *Mather v. Simonton* 73 Ind. 595. In a few cases a party is suffered to invoke this extraordinary jurisdiction of a court of equity, when it is manifest that the remedy at law is inadequate.

But when a party comes into equity it should be very plain that his claim is an equitable one. If the contract is unequal; if he has bought land at a price which is wholly inadequate; if he has obtained the assent of the other party to unreasonable provisions; if there are any indications of overreaching or unfairness on his part, the court will refuse to entertain his case, and turn him over to the usual remedies. *Chambers v. Livermore* 15 Mich. 381; *Munch v. Shabel* 37 Mich. 166; *Mississippi etc. R. R. Co. v. Cromwell* 91 U. S. 643; *Burton v. Le Roy* 5 Sawy. 510. If, for example, the contract is so drawn that the vendor has the option to retain the property or to convey it, performance in his behalf will be refused. *Maynard v. Brown* 41 Mich. 298. And in each case the court will consider "whether, in view of all the facts and those doctrines which are interwoven with the very texture of equity jurisprudence, and in view of the specific peculiarities presented, and the settled principles and maxims of the court, it is right and proper to entertain the case and administer relief." *Buck v. Smith* 29 Mich. 166, 170. These are familiar principles.

But the court will also refuse to interfere in any case where, if it were to do so, one of the parties might nullify its action through the exercise of a discretion which the contract or the law invests him with. The refusal in such a case does not depend of necessity upon any illegality, inequality, or unfairness, but it is sufficiently based upon the impropriety of imposing on the judge the labor, and on the public the expense of an investigation of disputes when the circumstances are such as to preclude any judgment that may be rendered from being final. No court can with reason be called upon to do a vain thing. A familiar instance is that of a contract for the formation of a partnership, which, though it is within the power of the court to enforce it, and it may be done under special circumstances when by its terms the partnership is to continue for a definite period, yet in the absence of a provision to that effect performance will invariably be refused, though the terms be in all respects equal, fair and legal. The reason is that the partnership which the court might establish by its decree, the parties or either of them might immediately dissolve; and Lord Eldon says "no one ever heard" of the court executing an agreement under such circumstances. *Hercy v. Birch* 9 Ves. 357. See also *Scott v. Rayment* L. R. 7 Eq. Cas. 112; *Meason v. Kaine* 63 Penn. St. 335; Coll. on Part. 19, 385; Story on Part. § 189; Pars. on Part. 298; Fry on Spec. Perf. 64, 504; Story Eq. Jur. § 666.

All contracts where the party has reserved to himself, or where the law gives him the authority to render nugatory any decree that ought to be rendered in their enforcement, rest upon the same principle. This was recognized in *Marble Co. v. Ripley* 10 Wall 339, 359; and more distinctly asserted and decided in *Express Co. v. Railroad Co.* 99 U. S. 191. In this last case the very strong assertion is made that "a court of equity never interferes where the power of revocation exists."

It is also assigned as a reason why specific performance should not be decreed in this case, that the terms of the contract as respects the manner of working, the extent to which

operations should be carried on, and the consequent royalty, are such that they cannot be enforced so as to do justice to the defendants after lease given, without the constant supervision of the court so long as the lease shall continue, to compel the lessees to proceed with their operations and to prosecute mining to such an extent as shall be reasonable and just. There are undoubtedly some difficulties in the case, of much the same nature with those encountered in *Blanchard v. Detroit etc. R. R. Co.* 31 Mich. 43; but as we refuse relief on other grounds, their consideration is not important here.

It is urged on the part of complainants that the recognition and enforcement of these contracts of option is absolutely essential to the development of the mineral resources of the State; and it may be and probably is the fact that they perform a convenient and useful function. But it does not follow from that fact that the party must have this specific remedy. He is supposed to rely upon his right to an action for the recovery of damages in all cases where it is not consistent with the principles of equity that he should have other redress. Denying specific performance does not deny the legality or obligation of the contract: it denies merely that the case is one of equitable cognizance.

The decree must be reversed and the bill dismissed with costs of both courts.

The other Justices concurred.

