RATHBONE *v.* GROH.

1. SPECIFIC PERFORMANCE—RIGHT TO REMEDY.

Specific performance is a remedy of grace rather than of right, and will be refused whenever enforcement would be inequitable.

2. SAME—LAND CONTRACT—ADEQUATE REMEDY AT LAW—BONA FIDE PURCHASER.

Specific performance of an option to purchase real estate will be denied where the rights of a bona fide purchaser have intervened and complainant will suffer little if any loss and has an adequate remedy at law.

Appeal from Wayne; Donovan, J. Submitted April 12, 1904. (Docket No. 41.) Decided July 27, 1904.

Bill by William S. Rathbone and Alfred Graham against Albert A. Groh, Lillian C. Groh, Chase Aldona, and Tilly Aldona, impleaded with Sophia M. B. Slocum and John H. Smedley, to enforce the specific performance of a land contract. From a decree for complainants, defendants Groh and Aldona appeal. Reversed.

*Chamberlain & Guise* and *William H. Turner*, for complainants.

*S. S. Babcock*, for defendants Groh.

*William F. Atkinson*, for defendants Aldona.

HOOKER, J. Defendants Albert A. and Lillian C. Groh are husband and wife. On December 11, 1893, Louis Groh conveyed to his son, said Albert A. Groh, the lands in controversy, but the wife of said Louis Groh, then and now living, did not sign the deed. The lands were also incumbered by a mortgage to one Slocum for $1,000. These lands adjoined lands owned by Rathbone and Ella Graham, the complainants, and the boundary was in dispute. Negotiations were had with a view to settling the same, in the course of which there was talk of a purchase of the land in controversy by the complainants Rathbone and Ella Graham, but, as they were not ready to do so at that time, the parties made the two writings following:

"Agreement made and concluded this thirteenth day of November in the year of our Lord one thousand nine hundred, between Albert A. Groh and Lillian C. Groh, his wife, of the township of Monguagon, Michigan, parties of the first part, and Ella B. Graham (formerly Ella B. Crane) by Alfred Graham, her attorney in fact, and William S. Rathbone, of the city of Detroit, Wayne county, Michigan, parties of the second part, *Witnesseth,* that

"*Whereas,* there has been a dispute between the parties hereto as to the true line between Elba Island and the lands adjoining same and now owned by the said Groh, and

"*Whereas,* it is the desire of all parties to have a settlement of such dispute and differences,

"*Now, Therefore,* it is hereby agreed that the said line shall be considered and established as follows:

"Beginning at an iron stake distance east 2,965 feet from the northwest corner of lot eight (8), as designated and located on the plat recorded in the office of the register of deeds for Wayne county, Michigan, in Liber 5 of Deeds, on page 321, and running thence north ten (10) degrees east to the north line of section 554; thence on a straight line to the southeast corner of land conveyed by Louis Groh and Emeline, his wife, to Walter Crane by deed dated September 11th, 1889, and recorded January 23rd,

1892, in the office of the register of deeds for Wayne county, Michigan, in Liber 387 of Deeds, on page 92; said land being situated in the township of Monguagon, Wayne county, Michigan.

"It is understood that at the time of the making of this agreement the said Emeline Groh, widow of Louis Groh, claims to have a dower interest in the land affected by this agreement, and that it is also incumbered by a mortgage given to Elliott T. Slocum.

"The said parties of the first part in consideration of the payment of the sum of one hundred seventy-five dollars ($175.00), hereinafter mentioned to be paid by the said parties of the second part, agree that they will, in addition to executing this agreement establishing the line as above set forth, pay any claim that may arise by reason of the dower interest of Emeline Groh in this property, also to secure a release from Elliott T. Slocum from the operation of said mortgage of so much of said land as may be necessary to enable the said parties of the first part to carry out this agreement.

"And the said parties of the first part hereby agree to warrant and defend the said parties of the second part from all claims of any other person or persons who may claim rights or interest in said lands, the intent and purpose being that the said parties of the second part shall be fully protected against any claims or pretended interest or claims of other parties that would interfere with their peaceable enjoyment of the premises up to the line hereby agreed upon as the boundary line between the parties.

"The said parties of the second part upon the performance of the agreements and undertakings of the parties of the first part hereto agree to pay to the said Albert A. Groh, and Lillian C. Groh, his wife, the sum of one hundred seventy-five dollars ($175.00).

"In witness whereof, the said parties hereto have hereunto set their hands and seals the day and year first above written.

"ALBERT A. GROH. [L. S.]
"LILLIAN C. GROH. [L. S.]
"WILLIAM S. RATHBONE. [L. S.]
"ELLA B. GRAHAM,
       "By ALFRED GRAHAM,
                 "Atty. in Fact. [L. S.]

"Signed, sealed, and delivered in presence of
    "A. C. SLAGLE.
    "STANLEY G. STEVENS."

" We hereby propose to sell and convey to you, William S. Rathbone and Ella B. Graham, by deed of general warranty, at any time before April 1, 1901, all the land embraced within the following lines:

" Beginning at a point in the center of the highway on the easterly side of Grosse Isle, being the southwest corner of lands conveyed by Louis Groh and Emeline Groh, his wife, to Walter Crane by quitclaim deed dated September 11th, 1889, and recorded in the office of the register of deeds for Wayne county, Michigan, in Liber 387 of Deeds, page 92; thence following the center line of said highway southerly to the intersection of said center line with the south line of lot number seven (7) in section 544; thence easterly on the south line of said lot seven to a point which intersects with the boundary line between Elba Island and our lands; thence northeasterly along the boundary line between Elba Island and the lands of said Groh to its intersection with the southeasterly corner of land conveyed by said Louis Groh and Emeline Groh to Walter Crane, above described; thence following the south line of said lands deeded to said Walter Crane by said Louis Groh and Emeline Groh to its intersection with said highway, all of said lands being in the township of Monguagon, Wayne county, Michigan.

" The purpose and intent being that you shall have all of the land bounded by said highway, the south line of lot seven in section 554, Elba Island, and the land heretofore conveyed by Louis Groh and Emeline Groh to Walter Crane and above mentioned; but I except from said land above described, so much thereof as we have agreed to convey to William Cady, and described as follows:

" Beginning at the southwest corner of land deeded to Walter Crane by Louis Groh and Emeline Groh, as per quitclaim deed, recorded January 23, 1892, in Liber 387, page 92 of Deeds, in the register's office, Wayne county, Michigan; thence easterly along the southerly line thereof, three hundred forty (340) feet; thence in a southerly direction parallel with the center line of the highway on the easterly side of Grosse Isle two hundred and forty feet (240); thence westerly on a line parallel with the north line thereof, three hundred forty (340) feet; thence on a northerly course along said highway to the place of beginning.

" And we hereby agree to pay any claim that may arise by reason of the dower interest of Emeline Groh in said property.

"In consideration whereof you are to pay us the sum of one thousand dollars ($1,000) less the sum of one hundred seventy-five dollars ($175.00) already paid by you under the agreement of even date herewith, the purpose of which was to establish a boundary line between us; and said land shall be free from all incumbrances, assessments, and taxes of every kind.

"We also agree to furnish a Union Trust Company abstract, showing good title in ourselves, free and clear of and from all incumbrances.

"ALBERT A. GROH.
"LILLIAN C. GROH.

"Signed, sealed, and delivered in presence of
"A. C. SLAGLE.
"STANLEY G. STEVENS.

"STATE OF MICHIGAN, County of Wayne—ss.:

"On this thirteenth day of November in the year of our Lord, nineteen hundred, before me, a notary public, in and for said county, personally appeared Albert A. Groh, and Lillian C. Groh, to me known to be the same persons named in and who executed the above and foregoing instrument, and severally acknowledged the same to be their free act and deed.

"STANLEY G. STEVENS,
"Notary Public, Wayne county, Michigan."

These writings were duly acknowledged on the same day. The option was afterwards assigned by Ella Graham to her husband, Alfred Graham. The sum of $175, mentioned in the agreement regarding the boundary, was duly paid, and within the period of 90 days, to wit, on March 1, 1901, they sent the following letter to Albert A. Groh:

"DETROIT, MICH., Mar. 1, 1901.

"Mr. ALBERT A. GROH.

"*Dear Sir:* We desire to notify you that we will be ready March 25, 1901, and desirous to carry out the agreement made and executed the 13th day of November, 1900, whereby you and your wife, Lillian C. Groh, agree to sell us the land as specified therein for the sum of one thousand ($1,000) dollars, one hundred and seventy-five ($175) dollars of which we have paid to you, leaving a balance of eight hundred twenty-five ($825) dollars to be paid in full as per agreement. Upon the delivery to us of

proper conveyance of lands described in said agreement, free and clear of all incumbrances, assessments, and taxes of any kind, we will pay to you the sum mentioned above, namely, eight hundred twenty-five ($825) dollars.

> "Yours truly,
> "WILLIAM S. RATHBONE.
> "ELLA B. GRAHAM,
> "By ALFRED GRAHAM,
> "Atty. in Fact."

Some two weeks after the expiration of the period given for acceptance of the option, Mrs. Groh, who desired to sell the place, saw Mr. Rathbone, and asked him to pay for the place or return the papers, and he said he could not return them because they were recorded. She subsequently threatened him with suit if he did not return the papers. Subsequently, and within two weeks of Aldona's purchase, she had another interview with Rathbone. Of this she testified:

"The option had expired, and I wanted to see whether he really wanted it or not, and so I went to him, and I said to him, 'Do you want the land just as it stands?' and he says, 'Have you got the release?' and I says, 'You know what we could do about that?' and he says, 'No; I cannot do anything with it in that way; no, I do not want it.' * * *

"Q. Now, what do you say Mr. Rathbone said to you?

"A. He said, 'No, he could not.' I said, 'Do you want it just as it stands?' and he said, 'Have you got the release?' and I said, 'No, you know we could not get it;' and he said, 'I do not want it.' I cannot just remember all.

"Q. Give the substance.

"A. I says, 'Do you want it as it stands?' and he says, 'No.'"

Thereupon she sold it to Aldona for $25 less than she would have received from complainants, had they taken it under their contract.

This bill was filed to compel specific performance, and the defendants have appealed from a decree for the complainants; the defendants Aldona claiming to be bona fide purchasers for value.

Aldona testified that he paid $800 for the property in ignorance of any claim or interest of the complainants, and received a warranty deed on May 7, 1901. The tenant on the place afterwards attorned to Aldona. Complainants put their option upon record June 3, and Aldona caused his deed to be recorded on June 7, 1901.

We discover nothing in the record which indicates that Aldona was not a bona fide purchaser for value, and he should be protected in his purchase, unless the fact that the record of complainants' contract before the record of his deed precludes it. The testimony shows that Aldona bought at a time when complainants' option was not of record, and in ignorance of its existence. He paid $800 for the property, and has since made improvements upon the place, which he must lose if he is defeated in this case upon the technical rule that, by recording this option before Aldona recorded his deed, the complainants have superior equities. Had Aldona taken title during the period of the option, it may be that he should be held to have taken subject to the contract, but he did not. If the option had been of record when he purchased, there was nothing to indicate that it had not expired. After it was recorded, the same thing was true, except the fact of its subsequent record; and, had Aldona actual notice of the making of the contract, there was nothing to indicate to him that the complainants had acted upon it, or had longer any equitable claim under it. Specific performance is a remedy of grace, rather than right (see *Chambers* v. *Livermore,* 15 Mich. 381; *Chapman* v. *Morgan,* 55 Mich. 124 [20 N. W. 820]), and will be refused where it is inequitable to grant it (*Munch* v. *Shabel,* 37 Mich. 166; *Rust* v. *Conrad,* 47 Mich. 449 [11 N. W. 265, 41 Am. Rep. 720]; *Pingle* v. *Conner,* 66 Mich. 193 [33 N. W. 385]).

In *Chambers* v. *Livermore,* supra, Mr. Justice COOLEY said:

"Specific performance, even of a binding contract, is not a matter of right, and a court of equity will refuse it, and turn the complainant over to his remedy at law, if

not clearly satisfied that it embodies the real understanding of the parties."

Again authorities are numerous that unconscionable bargains will not be so enforced.    In the present case there is evidence that convinces us that this agreement was based upon a mutual expectation that Slocum would be willing to release his mortgage, and the understanding that complainant could and would procure such release for him.    The proof shows that complainant tried to accomplish this, but failed, and so informed the defendant Groh, who then asked him if he wanted the deed as it stood, and he said "No," whereupon she sold it for $25 less to other parties.    This justified her in believing that the complainant did not insist upon his option, and in selling elsewhere.    Now he seeks to impose on her and another innocent party, Aldona, the burden of such obligation.    But whether this was complainant's intention or not, viz., to waive his right under the option, it is inequitable to insist upon the letter of his writing, which did not fairly state the bargain, and it is inequitable to ask that Aldona be subjected to loss, when the complainant will suffer but little, if any, loss in any event, and has another remedy at law if the Grohs have broken their contract.

The decree of the circuit court is reversed, and the bill is dismissed, with costs of both courts.

MOORE, C. J., CARPENTER and MONTGOMERY, JJ., concurred.    GRANT, J., did not sit.