STATE SECURITY & REALTY CO. v. SHAFFER.

SPECIFIC PERFORMANCE—EQUITY—VALUE.

Specific enforcement, being a discretionary remedy, will not be granted to compel an exchange of real property, where complainant's property was shown to be of little, if any, value, above an incumbrance outstanding against it, although it had been represented to defendants as worth from $7,000 to $10,000 more than the debt secured; and where defendants' property was worth $10,000 or upwards.

Appeal from Gratiot; Searl, J. Submitted January 30, 1913. (Docket No. 73.) Decided September 30, 1913.

Bill by the State Security & Realty Company against John R. Shaffer and another for specific performance of a contract to exchange real property. From a decree for defendants, complainant appeals. Affirmed.

*George A. Safford* and *Ralph B. Wilkinson* *(George P. Stone,* of counsel), for complainant.

*Thomas A. Conlon* and *O. G. Tuttle,* for defendants.

MCALVAY, J. The bill of complaint in this cause is filed to enforce specific performance of the following contract:

"DETROIT, MICHIGAN, April 15, 1910.
"STATE SECURITY AND REALTY COMPANY,
    "814 Majestic Bldg.,
        "Detroit, Michigan.
*"Gentlemen:*
    "We herewith submit the following proposition:
    "For and in consideration of the covenants hereinafter mentioned, we agree to turn over to you by bill of sale and a good and sufficient deed, free from all incumbrances, the following property, to wit:
    "Stock of merchandise, consisting of dry goods, clothing, furnishings, notions, boots and shoes, hardware, agricultural implements, harnesses and collars, stationery, confectionery, crockery, drugs, paints, oils, sundries, etc., etc., invoicing at about $5,000, contained in what is known as the store building and all other outlying buildings hereinafter mentioned, or upon the premises belonging to us in the village of Elm Hall, Sumner township, Gratiot county, Michigan, or any other place or places where said stock may happen to be stored.
    "Also the real estate with appurtenances [thereunto] belonging or in any wise pertaining known as the store building (two stories and basement), wing (one story and basement), barn (two stories), and

what is known as the Grove House (two stories) with wing (one story), and what is known as the Iron-sides House (two stories) with new barn, also what is known as the Hill House (two stories), also what is known as the Gill barn (two stories), and the wing (one story), and what is known as the Red·Shed (two stories), the granary and corn crib (two stories), the Strayer barn, and what is known as the Blair Shed, together with all lands fenced or otherwise belonging to any of said property, for which we are to receive from you in payment thereof by good and sufficient deed the following property situated on the northwest corner of Piquette and St. Antoine streets in the city of Detroit, Wayne county, Michigan, and more particularly described as the south ninety-three (93) feet in depth of lot five (5), and the south ninety-three (93) feet in depth of the east thirty-five (35) feet of lot four (4), being eighty (80) feet on Piquette by ninety-three (93) feet on St. Antoine street, of Emily Campau's subdivision of section thirty-one (31), upon which incumbrances exist to the amount of $10,000.

"In further consideration for which we agree to pay as follows:

"Twelve hundred dollars ($1,200) cash when the documents are passed between us closing the deal, which shall be within thirty days or as much earlier as the necessary papers can be executed, we to assume a mortgage for an amount which it will be necessary for you to make on which to raise money to retire any part of the present incumbrance of $10,000, and to execute a mortgage to you for an amount equal to the difference between the $15,000 due you in settle-ment (after the cash payment of $1,200 before mentioned), and the mortgage which you execute on said property.

"The terms of the above mortgage or mortgages shall be such that we will pay $1,000 six months from the closing of this transaction and interest on the full amount of $15,000 at six per cent., and $500 every six months thereafter, with interest on all sums remaining unpaid at the rate of six per cent. The full amount to become due five years from date. We to have the privilege of paying as much in excess of the

above payments at any interest ·date as we may so desire to do, or if you choose to give us a warranty deed, we will execute a mortgage to you for the sum cf $15,000 on the same terms as above.

"Both parties to furnish abstracts showing clear title to all· properties mentioned herein with the exception of the incumbrances already existing, and to be made as herein stated.

"We also agree to operate the store until such time as you can place someone in charge of the property making returns of all sales and caring for the business and property the same as if we were still the owners of the same, for which we shall receive a reasonable compensation, the property to remain under our care not longer than thirty days.

[Signed]  "JOHN R. SHAFFER,

[Signed]  "TILLIE A. SHAFFER

"Accepted this 9th day of May, 1910.

"STATE SECURITY & REALTY CO.

[Signed]   "F. E. BUSHMAN,

"President."

The defendant John R. Shaffer, a physician, had resided at the village of Elm Hall for 35 years. Desiring to exchange his property there for Detroit property, he listed his holdings with William E. Landers, of Detroit, as a real estate agent. Landers, who was manager of an insurance agency, had turned over his real estate business to Arthur D. Brooks under an agreement that all commissions should be equally divided. Brooks brought defendants' property to the notice of Franklin E. Bushman, who is president of the complainant company. A trade had been made between defendant John R. Shaffer and Bushman, in which one of Shaffer's farms was disposed of to Bushman. During the negotiations involved in this trade, Bushman went to Elm Hall and became acquainted with defendants' property. Later Bushman, through Brooks, offered different trades to defendants for this property and finally on April 15, 1910, suggested a trade for the Piquette avenue property. The terms were discussed and Shaffer returned to his home,

having instructed Bushman to draw up a proposition. The contract in question was drawn by Bushman in duplicate or triplicate and all copies handed by him to Brooks, who forwarded them to defendants at Elm Hall. The proposition was at once executed by the two defendants and returned to Brooks, who in turn handed one of the copies to Bushman. No notice of acceptance (in express terms) was given to the defendants by Bushman, Landers, or Brooks, but on May 9th Brooks wrote defendants that the abstracts were ready and that they should come in as soon as convenient. Accordingly they went to Detroit on May 13th, with the expectation that the deal would be closed. Bushman had arranged for a mortgage for $15,000 upon the property with one Barnard. This mortgage was to be executed by the defendants and was by them so executed on the afternoon of the 13th; it being expected that the papers would be passed the following day. In the meantime some irregularities had been discovered in the abstract of the Piquette avenue property by defendants' attorney, and complainant's attorney discovered some omissions in the deed which defendants had executed. On the evening of the 13th and the morning of the 14th defendants visited the Piquette avenue property, made some inquiries as to the value, and concluded it was worth much less than the sum of $28,000, the price at which they had proposed to trade for it. Defendant John R. Shaffer went to complainant's office, repossessed himself of his abstract, and walked out. A deed was tendered to him by complainant which he refused. Brooks had an arrangement with Bushman, by the terms of which he was to receive 1½ per cent. from Bushman if the deal went through. Landers' agreement with defendants was for 2 per cent. commission. Defendants had no knowledge that Brooks, who was associated with their agent, was being paid a commission by Bushman, one-half of

which was to go to Landers. It would seem from the record that neither Landers nor Brooks had any authority to act for or bind the defendants. At the time the negotiations were in progress, there were two mortgages upon the Piquette avenue property, one for $6,000 to the Dime Savings Bank, and a second one which was in process of foreclosure. In order to secure a loan of $15,000 on the property, Bushman agreed to pay a commission of $1,500. He likewise agreed to give a mortgage as further security upon some 16 vacant lots valued by him at $300 each, as well as to sign the $15,000 note himself and secure the signatures of his wife and one or two associates. Witnesses for complainant estimated the value of the Piquette avenue property at from $22,000 to $25,000.

On behalf of defendant some seven witnesses were sworn as to value. The value of complainant's property as given by these witnesses (and they seem to be reasonably competent and reliable) varies from $12,400 to $16,700; the average being about $15,000. Defendants valued their Elm Hall property at $11,800. Complainant contends that this valuation is grossly exaggerated. The court below dismissed complainant's bill, and it has appealed.

In support of the decree defendants contend that the contract cannot be enforced because of lack of mutuality. Hollingshead v. Morris, 172 Mich. 126 (137 N. W. 527, 41 L. R. A. [N. S.] 310), and cases cited. We find it unnecessary to consider this phase of the case for the reason that we have concluded that the contract in question is one which should not be enforced in equity. Assuming the valuation of complainant's property given by defendants' witnesses to be correct, it is apparent that the mortgage for $15,000, subject to which defendants were to take it, represented practically the entire value. The fact that complainant agreed to pay a commission of $1,500 upon a $15,000 loan and was obliged to give

other security as well is to our minds rather convincing proof that the Piquette avenue property was not worth much more than that sum. So that, if the contract is specifically enforced, defendants would be compelled to transfer their property (be it worth little or much) to complainant practically for nothing.

Specific performance is not a remedy of right but is within the legal discretion of the court. *Chambers* v. *Livermore,* 15 Mich. 381; *Chapman* v. *Morgan,* 55 Mich. 124 (20 N. W. 820); *Cox* v. *Raider,* 138 Mich. 249 (101 N. W. 531). And will be refused where it is inequitable to grant it. *Rust* v. *Conrad,* 47 Mich. 449 (11 N. W. 265, 41 Am. Rep. 720); *Rathbone* v. *Groh,* 137 Mich. 373 (100 N. W. 588). See, also, 26 Am. & Eng. Enc. Law (2d Ed.), pp. 67, 68.

The decree of the court below is affirmed, with costs.

STEERE, C. J., and MOORE, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.