CASE 51.—ACTION BY LIZZIE T. PREWITT AGAINST W. Y.
JONES FOR SPECIFIC PERFORMANCE OF A CON-
CONTRACT.—March 19.

# Jones v. Prewitt

Appeal from Clark Circuit Court.

JAMES M. BENTON, Circuit Judge.

Judgment for plaintiff. Defendant appeals.—Re-
versed.

Specific Performance — Contracts Enforceable — Sale of Land —
Fairness.—Though a purchaser, where he accepts a
conveyance of land with knowledge of the existence
of a highway or railway through the land, cannot thereafter
obtain an abatement of the purchase price or a cancellation
of the contract on account of the incumbrance, a contract to
buy at a specified price per acre an entire tract of land through
which a railroad had condemned and paid for a right of way
will not be specifically enforced, where nothing was said
before or at the time the contract was made which would
show the purchaser's intention to pay for the land embraced
in the right of way, and where he refused to accept the deed
requiring such payment, since such a contract is not fair
and equitable.

JOUETT, BYRD & JOUETT, for appellant.

The judgment in the railroad condemnation proceeding did not
stop with adjudging that the railroad company was entitled to
the possession of the land as provided in section 839 of the Ky.
Statute, but enlarged upon this and further adjudged that the
railroad was the owner of the land. We contend that appellee
having accepted payment for the land, under a judgment which
said that when she did accept such payment the railroad company
would become the owner of the land is now estopped from
claiming that it is not the absolute owner. And we contend
that under section 839 Ky. Stat., if the judgment in a condemna-

tion proceeding adjudges that the railroad becomes the owner of the land, upon the payment adjudged, then it is the owner (quoting from the statutes) "as fully as if the title had been conveyed to it." If this is the law appellee's case at once falls to the ground. If not the law; then she must show that appellant is the actual purchaser of the land and has accepted a conveyance for same, and this she has not and can not do.

PENDLETON, BUSH & BUSH for appellee.

POINTS AND AUTHORITIES.

1. A railroad right-of-way in use through the farm when sold, is not a breach of the warranty, and must be included in the purchase at the contract price. (Bird v. Bank of Williamstown, &c., 11 Ky. Law Rep., 868; Weller, Trustees, etc. v. Fidelity Trust & Safety Vault Company, 23 Ky. Law Rep., 1136; Butt v. Riffe, 78 Ky., 356; 8 Amer. & Eng. Encyc. of Law, 124-125; Desvergers v. Willis, 56 Ga., 515, 21 Amer. Rep., 289; Huyck v. Andrews, 113 N. Y., 81, 10 Am. St. Rep., 432; Whitebeck v. Cook, 15 Johns., 483, 8 Am. Dec., 272; Kutz v. McCune, 22 Wis., 628, 99 Am. Dec., 95; Hardwood v. Benton; 32 Vt., 724.)

2. A railroad right-of-way acquired by condemnation proceedings give the company only an easement to the land. (10 Amer. & Eng. Enc. of Law, 1200; Sec. 7, c. 18b, p. 283, Gen. Sts. (1887); Sec. 10, c. 18b, p. 283, Gen. Sts. (1887); Morris v. Schoolsville Branch Red River Turnpike Road, 6 Bush, 671; Kelly, &c. v. Donahue, &c., 2 Metc., 485.)

3. An executory contract for the sale of land implies no greater warranty of title than that given by a general warranty deed. (1 Page on Contracts, 165.)

OPINION OF THE COURT BY JUDGE CARROLL.—Reversing.

On March 13, 1906, the parties to this controversy entered into the following contract: "This contract witnesseth:. I have this day bought of Lizzie T. Prewitt all of that part of her Weathers farm that lies north of the line that we have agreed upon, said line begins at a point on the Clontonsville pike a little north of where three locust trees stand, and runs in an

easterly direction to a point a little south of a walnut tree in Van Meter's line. I agree to pay for said land at the rate of one hundred dollars per acre, the whole amount to paid when the deed is made. I am to have possession of the land as soon as it is paid for, and of the house as soon as Mrs. Prewitt can get her part of the line fence built and the house repaired that Mr. Cannor is to move into. W. Y. Jones." On March 20th they had the land surveyed, when it was found to contain 184 acres. In 1889, the Kentucky Union Railway Company condemned under the statute a right of way through the tract of land. The right of way contained 5.28 acres, and the company was required by the judgment of the court to pay to Mrs. Prewitt, who then owned the land, $396 for the land actually taken, $2,062 for fencing, and $1,542 for damages to her adjacent lands. Soon after the condemnation proceedings, the railroad company took possession of the land condemned, and were in possession and use of it, and the same was inclosed by a fence at the time the contract before mentioned was entered into. At the time and before the contract was made, Jones knew of the existence of the right of way through the land he contemplated purchasing, but nothing was said by either party before or at the time the contract was entered into about the title or ownership of the right of way. After the survey was made, Mrs. Prewitt tendered to Jones a deed for the entire tract, including the land embraced in the right of way, and demanded of him payment in accordance with the contract. Jones declined to accept or pay for the land covered by the right of way. The question at issue between the parties as stated in the agreed case is "whether or not under the terms of the contract of sale Mrs. Prewitt is entitled to be paid for

the land covered by the right of way at the rate of
one hundred dollars per acre, amounting to 5.28 acres,
and whether or not under the terms of said contract
of sale Jones should be required to accept said land
covered by said right of way as a part of the land pur-
chased by him under the contract, and to pay plaintiff
therefor at the above price per acre fixed by the con-
tract." The lower court adjudged in favor of Mrs.
Prewitt, and Jones appeals.

To support the judgment appellee depends upon the
following cases decided by this court: In Butt v. Riffe,
78 Ky. 352, Butt purchased of Riffe a tract of land
which was conveyed to him; Riffe retaining a lien for
the unpaid purchase money. In the deed Riffe war-
ranted the title generally, and stipulated that he would
give Butt free and full possesison of the land on a day
named in the conveyance. After Butt took possession
under the conveyance, Napier instituted an action in
the Lincoln circuit court, asserting a right of way
over the land. A trial resulted in a judgment decree-
ing that Napier was entitled to a passway embracing
a strip of land 25 feet wide and one-half a mile long
through the land. After this judgment was entered,
Riffe instituted an action on the notes for the unpaid
purchase money. In defense to this action, Butt
asserted as a counterclaim the damage he had sus-
tained by reason of the recovery of the passway by
Napier, alleging that at the time of sale and convey-
ance he was ignorant of any claim that Napier had
a passway, and that Riffe had concealed from him the
existence of such a right. The lower court sustained
a demurrer to the answer and counterclaim. On appeal
this court, although holding that the passway obtained
by Napier was a breach of the covenant of war-
ranty in the deed for which he was entitled to recover

damages, said in the course of the opinion: "It is
further argued by counsel for Riffe that, if the facts
pleaded constituted a breach, Riffe is also liable on
his covenant for that part of the land embraced by the
public highway that constitutes a part of one of the
tracts. We think not; no more than if the Common-
wealth had entered upon the land after the purchase
by Butt and condemned a part of the tract for a public
road. Such covenants have never been held to em-
brace an entry by the State in the exercise of the
right of eminent domain. It is no eviction for which
the grantor can be made liable when the land is taken
for public use, and the purchaser when a public high-
way is on land at the date of his purchase must be
held to know of its existence and to have made his
bargain with a knowledge of the inconvenience result-
ing from it." In Bird v. Bank of Williamstown, 13 S.
W. 430, 11 Ky. Law Rep. 868, Northcut sold a tract
of land to. Bird by the acre, conveying the same to
him by a deed with covenant of warranty. In a suit by
the bank as assignee of the notes executed for the pur-
chase price Bird set up as a defense that there was a
deficit of 3⅞ acres in the quantity of land, as North-
cut had previously conveyed it to the Cincinnati
Southern Railway, that was in possession at the time
Bird purchased.. It is stated in the opinion that Bird
knew that the railway run through the land at the time
he purchased, and he agreed that its right of way was
to be counted as a part of the purchase. In disposing
of the case, the court said: "It is true a covenant of
warranty in a deed binds the grantor for quiet enjoy-
ment by the grantee, and protects the latter against
incumbrances affecting the title, or that he may be
compelled to remove to possess and enjoy the estate.
But, if a public highway be upon land at the time of

the purchase, the purchaser should be presumed to know of its existence, and to buy with an expectation and knowledge of any inconvenience arising from its existence.  It is perfectly evident from Bird's own testimony that he knew when he made the purchase that the railway company had the right of way through the land.  The railroad was then being operated over it, and aside even from the understanding when the verbal purchase of a part of the land was made that the land embraced in the right of way of the railroad should be surveyed to him, it should be counted, because he knew of the existence of such right when he purchased, and could as well be heard to complain of the then existence of an ordinary public road over the land."  In Weller v. Fidelity Trust & Safety Vault Company, 64 S. W. 843, 23 Ky. Law Rep. 1136, one Nesbitt conveyed to the trustees of the Walnut Street Baptist church of Louisville a certain parcel of land situated at the corner of Twenty-sixth and Market streets, described as follows: "Beginning at a point in the center of Twenty-sixth street, where it is intersected by the south line of Market street, and running thence eastwardly with the south line of Market street 115 feet, thence southwardly and parallel with said Twenty-sixth street 177 feet, more or less, to Congress street if extended, thence westwardly with said Congress street 115 feet to the center line of Twenty-sixth street, thence northwardly with the center line of Twenty-sixth street to the point of beginning."  The purchase money notes were assigned to the Fidelity Trust & Safety Vault Company, and in a suit upon them it was insisted that no recovery should be had because a strip 15 feet wide was in the adverse possession of the city of Louisville at the time the conveyance was made, and that there should be either

a cancellation of the contract or an abatement of the notes to the extent of the value of the strip of land so held adversely. It appeared that the strip of land in question was a part of Twenty-sixth street, and was used as a part of the street at the time the conveyance was made, and that the trustees, when they accepted the deed, knew that this strip of land was occupied and used by the city as a street, and that it could not be taken from it. In disposing of the case the court said: "The street was an open and notorious highway upon the land at the time of the purchase. The occupancy and use of the strip as part of the street is not a breach of the warranty. It was not only open and visible, but the vendees were acquainted with all the facts, and knew that it was a public street of the city of Louisville." Citing with approval the Riffe and Bird cases, supra, the judgment of the lower court rejecting the defense was affirmed. In the last two-named cases the vendees accepted deeds with actual knowledge of the existence of the incumbrances upon the land. In the Riffe case it is held that there is no eviction for which the grantor can be made liable when the land is taken for a public use, and that a purchaser, when a public highway is on the land at the date of his purchase, must be held to know of its existence, and to have made his bargain with knowledge of the inconvenience resulting from it. In that case the point here in controversy was not directly involved, but in the other two cases, and particularly in the Bird case, it was. There is, we think, a sound distinction between the cases cited and the one at bar. The case at bar is in effect an action for the specific performance of a contract. Mrs. Prewitt asks the chancellor to adjudge that she is entitled to be paid for land actually in the inclosed possession of the rail-

road company, and that it is reasonably certain it will continue to hold indefinitely or forever.  She has heretofore received compensation for the land, and is now demanding that she be paid again for it.  In other words, she asks the chancellor to compel Jones to pay $100 for land, the use or possession of which he will never in reasonable probability enjoy, and that she has parted with all her right, title, and interest in except an exceedingly remote reversion contingent upon it being abandoned by the railroad company. The enforcement of this contract would be manifestly unjust and inequitable.  It is such a contract as the specific performance of will not be adjudged.  It can not fairly be said that it was in the contemplation of the parties when the contract was entered into that Jones should be required to pay for this land.  It seems evident that if the matter had been discussed, or it had been suggested that he would be required to pay for it, that he would have declined to do so, especially as he was buying the land at so much per acre, and expected under the terms of the contract to be placed in the possession of.

In 26 Am. & Eng. Ency. of Law, 67, the principle is announced, supported by numerous authorities, that: "Before the discretion of a court of equity will be exercised in favor of the specific performance of a contract, it must appear that the contract is fair, just, and equitable in all its parts.  If, therefore, a decree of specific performance would work a hardship or injustice upon the defendant, or operate oppressively upon him, a court of equity will decline to interfere." In Story's Equity, section 750, the author says: "Indeed, the proposition may be more generally stated that courts of equity will not interfere to decree a specific performance except in cases where it would

be strictly equitable to make such a decree.'' Our own court in Woollums v. Horsely, 93 Ky., 582, 20 S. W. 781, 14 Ky. Law Rep. 642, said:.''There is a distinction between the case of a plaintiff asking a specific performance. of a contract in equity and .that of a defendant resisting such a performance. Its specific execution is not a matter of absolute right in party, but of sound discretion in the court. Thus a hard or unconscionable bargain will not be specifically enforced, nor, if the decree will produce injustice or. under all the circumstances be inequitable, will it be rendered. In other words, a court of equity will not exercise its power in this direction to enforce a claim that is not under all the circumstances just as between the parties, and it will allow a defendant to resist a decree where the plaintiff will not always be allowed relief upon the same evidence. A contract ought not to be carried into a specific performance unless it be just and fair in all respects. When this relief is sought, ethics are considered, and a court of equity will sometimes refuse to set aside a contract, and yet refuse its specific performance.'' The same doctrine is announced in Ratterman v. Campbell, 80 S. W. 1155, 26 Ky. Law Rep. 173, McCutcheon's Heirs v. Rawleigh, 76 S. W. 50, 25 Ky. Law Rep. 549. If Jones, after.entering into the contract, had, after the land was surveyed and the quantity ascertained, accepted a deed in which he obligated himself to pay for the whole number of acres, with knowledge of the incumbrance, it might reasonably be said that in entering into the contract he consented to pay for the land included in the right of way; and we conclude that the fact that the vendees in the cases cited.had accepted deeds was a potent factor in inducing the court to hold that they could not have an abatement of the purchase price,. Whatever the.

reason for the opinions, we are not disposed to extend the doctrine laid down in these cases so as to embrace an executory contract like the one before us. In other jurisdictions there is irreconcilable conflict of authority upon the question we are considering; some of the courts making a distinction between railroad rights of way and public highways, holding that the existence of a right of way for a railroad might be a breach of the covenant for quiet enjoyment and possession when the existence of a public highway would not be. The cases upon this question are collected in 8 Am. & Eng. Ency. of Law, p. 124, and 11 Cyc. 1124. Although the rule in this State as announced in the foregoing cases is that, when the purchaser accepts a conveyance with knowledge of the existence of a highway or railway, he can not thereafter obtain an abatement of the purchase price or a cancellation of the contract on account of the incumbrance, this principle will not be applied to railway rights of way as against a purchaser under an executory contract, in the absence of evidence showing that it was the intention of the purchaser to pay for the land inclosed in the right of way, when he objects in seasonable time to accepting a conveyance of the property that would require him to pay for the right of way.

Wherefore the judgment of the lower court is reversed, with directions to proceed in conformity with this opinion.