Argued February 24, reversed March 23, 1915.

## MILLER v. LANEDA.

(146 Pac. 1090.)

**Injunction—Complaint—Admission.**

1.  A complaint in an action against a corporation and others, for an injunction, allegeing that all the defendants, except the corporation, were insolvent, was an admission that the corporation was solvent and able to respond in damages.

**Injunction—Contracts Enforceable—Unfair Agreement.**

2.  Under a contract between a corporation, of which the former owners of land were officers and directors, plaintiff and such owners individually, whereby plaintiff agreed to survey lands conveyed by the owners to the corporation, prepare the plats, and pay all expenses of advertising, etc., connected with the sale of the property, and to expedite the sale according to his best judgment, and received the exclusive right to sell and dispose of land, either as subdivided or unplatted, to net the corporation a certain figure per acre, and in which all positive stipulations capable of enforcement were imposed upon the owners, and under which the corporation had no adequate remedy against the plaintiff if he refused to plat or if he delayed or refused to sell, injunction would not be granted at plaintiff's suit to restrain defendants from trespassing on the premises, from advertising for sale, from advertising that plaintiff had no interest in the property, and from doing anything to deprive plaintiff of his rights under the contract, equivalent to enforcing its specific performance; since the contract was one-sided and unfair, and its enforcement would work harshly against the defendants.

[As to mutuality of contract, see notes in 7 Am. Dec. 492; 140 Am. St. Rep. 57. As to mutuality of remedy, necessity for, and what is, see note in 27 Am. St. Rep. 173.]

From Tillamook: WEBSTER HOLMES, Judge.

Department 2.    Statement by MR. JUSTICE HARRIS.

Mertie D. Lane, E. H. Lane, Silas J. Shourds and Florence M. Fabrique (or Kreps) were the respective owners of certain parcels of land, aggregating about 345 acres, in Tillamook County, and situated near the ocean beach. The plaintiff and the above-mentioned owners entered into a written contract, on June 1, 1909, whereby the premises were to be platted and the plaintiff was to have the exclusive right, until December 31, 1925, to sell the same on terms and conditions stated in

the agreement. The writing contemplated that the owners would form a corporation and convey their lands to such corporation when formed; and in compliance with that provision of the agreement, on May 23, 1912, the land proprietors organized a private corporation under the name of Laneda, Incorporated, to which the real property referred to was thereupon conveyed.

A written agreement was made June 1, 1912, wherein the Laneda, Incorporated, is known as the party of the first part; L. S. Miller, plaintiff herein, is designated as the party of the second part; and Mertie D. Lane, E. H. Lane, Silas J. Shourds and Florence M. Kreps are referred to as the parties of the third part. After reciting the original ownership of the lands and the agreement of June 1, 1909, providing for the formation of a corporation, relating the fact that such corporation had been organized and was now the sole owner of the lands, the writing of June 1, 1912, so far as material hereto, reads as follows:

"First. That this agreement shall supersede the aforesaid agreement between the second and third parties dated June 1, 1909, and said last-named agreement be and is hereby terminated, satisfied and discharged and all rights thereunder forever extinguished in consideration of the execution of this instrument.

"Second. The party of the second part shall at his own expense survey the said lands as follows: The northwest quarter of the southwest quarter of section 28, and the east half of the southeast quarter of section 29, and the northeast quarter of the northeast quarter of section 32, all in township 3 north of range 10 west of Willamette meridian, situated in Tillamook County, State of Oregon; also the west half of the southeast quarter of section 29, lot 3 of section 29, all in township 3 north of range 10 west of the Willamette meridian; also lot 2, in section 29, township 3 north of range 10 west of the Willamette meridian; also the southwest

quarter of the northeast quarter of section 29, township 3 north of range 10 west of the Willamette meridian— all of the aforesaid property being situated in Tillamook County, State of Oregon.

"Third.    From time to time as said second party shall designate, said first party shall plat the aforesaid lands and dedicate the streets and highways to the public as shown by the plats prepared by said second party at his expense and cause the same to be duly recorded in the proper county office of Tillamook County, and provided that in the dedication of streets and highways reservation may be made of an exclusive right to construct, operate, own and maintain over, along or under the said streets or highways systems for transporting water, gas, light, heat or power in any manner whatsoever.

"Fourth.    The party of the second part is hereby given the exclusive right to sell and dispose of said lands, either as the same may be hereafter subdivided or in tracts unplatted, and at such prices and upon such terms as may be deemed advisable by said second party.    Provided, however, that the minimum prices at which said lands or parts thereof shall be sold shall be such that from the aggregate sale price of said lands the said party of the first part shall receive such sum of money as shall equal or amount to $606.66 per acre for each acre of said land so conveyed; and whereas, in order to stimulate the market for said property, it will be necessary to sell some of the lots at a less rate than the rate of $606.66 per acre, it is hereby agreed that the execution and delivery of a deed or contract for a deed from said first party to any purchaser or purchasers shall, as to the property so conveyed, be deemed a ratification of the same, and in no event shall the second party be liable to the first party for any deficiency in the sale price of said lots under the said $606.66 per acre.

"This agreement shall continue in full force and effect until the 31st day of December, 1928, unless sooner terminated by the sale of all the property herein

mentioned or by mutual consent of the parties of the first and second parts.

"Fifth. It is further agreed that, as part compensation for the services of the said second party, the said first party agrees to pay all sums of money obtained from the sales of its real property herein mentioned in excess of said average price of $606.66 per acre, and whenever and as soon as said first party shall have received from its portion of the proceeds of the sale of lands herein mentioned a sum equivalent to $606.66 per acre average for the entire said tract so to be sold, exclusive of commissions to be paid to said second party, then the said first party shall deed to the said second party, his heirs, or assigns, the remainder of said lands, if any, by good and sufficient warranty deed, free from liens and encumbrance.

"Sixth. The said first party further agrees to drain the land in the south half of section 29, hereinbefore mentioned, with a permanent tile drain of sufficient capacity to drain said lands properly at the expense of said first party, and also at its own expense said first party agrees to clear the underbrush from all of the property described herein on or before the platting of said property, and if said first party neglects or fails to perform this part of the agreement then the said second party is hereby authorized to perform the same, and the reasonable cost thereof shall be deducted out of the said first party's share of the proceeds of sales of any of the real property herein mentioned.

"Seventh. The party of the first part agrees not to mortgage, encumber, transfer, sell or convey any of the said premises or allow the same to be encumbered without first obtaining the written consent of the said party of the second part so long as this agreement shall remain in force and effect.

"Eighth. It is further agreed that the said second party shall at all times have access to said property and every part thereof while this agreement shall be in effect and shall have the right to enter into and upon the same with prospective purchasers, agents and employees of said second party and shall have the right to

appoint or employ at his own expense such subagents for the sale of said property as he may deem advisable.

"Ninth.   The party of the first part agrees to keep up and pay all taxes on all unsold property belonging to it and mentioned herein.

"Tenth.   The party of the second part agrees to bear all expenses of advertising and all incidental expenses connected with the sale of said property and to expedite the sale thereof according to his best judgment.

"Eleventh.   It is hereby understood and agreed that the proceeds from the sale of said property shall be apportioned as follows, to wit: From the first payment of each and every parcel of land sold 20 per cent thereof to be paid to the party of the first part and 80 per cent to the party of the second part.   Of the second and subsequent installments paid on any parcels of said lands 40 per cent of said installments shall be paid to the first party and 60 per cent to the second party, provided, however, that whenever and as soon as the total sum paid said first party hereunder shall have amounted to such sum as shall be equivalent to an average price of $606.66 per acre, then all subsequent payments on said sales go to the second party, and provided further that in case any timber shall be sold off said lands the sum received shall be applied toward the total sum to be received by said first party from said lands.   On lots sold for cash, one payment proceeds to be divided as follows: 40 per cent to first party and 60 per cent to second party, subject to rule as to total sum to be paid first party.

"Twelfth.   The exclusive right to own, operate, install and maintain water, gas and electric systems for the transportation of water, gas, light and power or either of them, over, under or along the streets or highways in the said lands, shall be and is hereby given to said second party, his heirs and assigns, as a further compensation for his services in connection with this contract.   And said second party shall receive no other

compensation for the sale of said lands other than is in
this instrument provided.

"Thirteenth.    That in the event of the discovery in
paying quantities of natural gas, oil, or other mineral
or of precious metals upon said premises, all property
thereafter sold shall be sold reserving to the parties of
the first part a two-thirds portion and to the second
party a one-third portion of the said oil, gas or other
mineral substance or precious metals.

"Fourteenth.    The parties of the first and second
parts hereby agree that an accounting be had of all
properties sold hereunder at any time and as often as
the same may be demanded by either of said parties,
and provided that all commissions due the said second
party shall be paid to him out of the payments made on
the several pieces of property sold."

When the first agreement was made the property in-
volved was undeveloped, covered with underbrush and
timber, and was in a raw and primitive condition.
About 70 acres were surveyed and platted into town
lots and streets; the portion platted being called Man-
zanita Beach.    The streets were cleared off and graded,
the property was advertised, roads were built, houses
constructed, and plaintiff claims that he has paid or
obligated himself to pay about $8,000 for surveying,
grading streets, advertising, and building.    A public
road has made the land accessible, and a postoffice
has been secured.    Fifty-six lots have been disposed of
by deed or a contract for a deed.    The defendants E.
H. Lane, Mertie D. Lane and Silas J. Shourds are
directors, E. H. Lane is president, and Silas J. Shourds
is secretary, of the corporation.    The plaintiff claims
that the beach property under fair business conditions,
and during the time specified in the contract, can be
sold in lots and tracts for such amounts as in the ag-
gregate will total about $800,000; and the plaintiff
further says that about 75 per cent of that sum will be

necessary to advertise, promote and develop the property. It is conceded, however, that the wonderful possibilities of this once isolated beach property have been affected by prevailing financial conditions, and that business has been dull during the last year.

About April 1, 1914, the plaintiff was notified by the defendants that they repudiated the contractual relation between the parties, would no longer carry out the agreement, and advertised that Miller was no longer their agent. The plaintiff commenced a suit for an injunction, and thereafter obtained a decree enjoining the defendants from trespassing upon the premises, from advertising and offering the same for sale, from advertising to the world in any way that the plaintiff has no interest in the real property, from conveying the same, except through the plaintiff and in accordance with the contract from doing anything to embarrass the plaintiff in his efforts to dispose of the premises in accordance with the contract, and from doing anything that would deprive the plaintiff of his rights under the contract. The defendants appealed.

REVERSED. SUIT DISMISSED.

For appellants there was a brief over the names of *Mr. A. H. McCurtain* and *Messrs. Bauer & Greene,* with oral arguments by *Mr. Thomas G. Greene* and *Mr. McCurtain.*

For respondent there was a brief and an oral argument by *Mr. Sidney S. Johnson.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1. The complaint alleges that all the defendants, except the Laneda, Incorporated, are insolvent. The al-

legation, therefore, is an admission that the corporation is solvent and able to respond in damages. The record does not exhibit any evidence at all tending to show that any of the remaining defendants are unable to pay any judgment that might be obtained; and consequently it must be assumed that all the defendants are solvent.

2. Resolved to its final analysis, the contract is one for the services of the plaintiff. An examination of the written contract discloses that Miller only agrees to survey the lands, prepare the plats, bear all expenses of advertising, pay all incidental expenses connected with the sale of the property, and to expedite the sale thereof according to his best judgment. The plaintiff did not pay any money for the agreement, and the contract does not require him to do anything except as stated. From time to time, as Miller shall designate, the corporation is obliged to plat the lands and dedicate the streets, as shown by plats prepared by plaintiff. Miller is given the "exclusive right to sell and dispose of the lands, either as the same may be hereafter subdivided or in tracts unplatted, and at such prices and upon such terms as may be deemed advisable" by him, provided the corporation receives $606.66 per acre for the land involved. The plaintiff has the right to cause the platting of all or any part of the land, and at such time or times as he may see fit. Should the owner desire to plat and dedicate one part rather than another portion, or at one time rather than another time, the plaintiff could answer that he has not so designated. Should the corporation complain that no sales were being made, Miller could make a complete answer to such objection by saying that he was authorized to expedite the sales according to his best judgment. By inactivity he has it within his power to tie up the prop-

erty until December 31, 1928; or by his activity he can dispose of the choice or more salable parts of the land, retain the lion's share of the proceeds, and then leave the owner with the remainder of the land as a mere husk. All the positive and definitive stipulations which are capable of practical enforcement have been imposed upon the owner. The Laneda, Incorporated, would not have an adequate remedy against plaintiff if the latter should refuse to plat because Miller alone has the right to designate what shall be platted and when it shall be done; and so, too, would the corporation be remediless if the plaintiff delayed or even refused to sell because the latter has the exclusive right to sell, coupled with what is in form an agreement but in practical effect an express privilege of expediting the sale according to his best judgment. The plaintiff can injure the owner by selling only the best part of the land, or cripple the latter by not selling at all.

The granting of the injunction as prayed for would be equivalent to enforcing the specific performance of the contract. The right to the aid of a court of equity in the enforcement of an agreement is not an absolute right, under all circumstances. Equity will not promote hard bargains nor compel obedience to an unfair and one-sided agreement when the consequences will be harsh. Equity strives to do justice, seeks to prevent injustice, and refuses to go the ways that lead to unfairness or wrong. The writing under discussion is one-sided and unfair, and the enforcement of its terms would produce such harsh consequences that a court·of conscience will refuse equitable interference and leave the plaintiff to his remedy at law: *Philadelphia Ball Club, Ltd.,* v. *Hallman,* 8 Pa. Co. Ct. R. 57; *Sanders* v. *Newton,* 140 Ala. 335 (37 South. 340, 1 Ann. Cas. 267); *Goodwin* v. *Collins,* 3 Del. Ch. 189; *Jones* v.

*Prewitt,* 128 Ky. 496 (108 S. W. 867); *Van Norsdall* v. *Smith,* 141 Mich. 355 (104 N. W. 660); *Cooper* v. *Chittenden,* 33 Neb. 313 (50 N. W. 2); *Mulligan* v. *Albertz,* 103 Wis. 140 (78 N. W. 1093); *Chambers* v. *Livermore,* 15 Mich. 381; Pomeroy on Contracts, §§ 38, 40, 175, 180; 26 Am. & Eng. Ency. Law (2 ed.), 67; 22 Cyc. 851; 36 Cyc. 612.

The decree of the trial court is reversed and the complaint is dismissed.    REVERSED.    SUIT DISMISSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BEAN concur.