## LINGEMANN *v.* NAOUMSON.

1. APPEAL AND ERROR — APPELLATE COURT GOVERNED BY RECORD MADE.

In disposing of a case on appeal, the Supreme Court must be governed by the record as made, and may not go outside of what is there shown.

2. SPECIFIC PERFORMANCE—NOT AN ABSOLUTE RIGHT.

The special relief of specific performance is not strictly a matter of absolute right even though a legal right to damages for breach of contract might exist.

3. DISMISSAL AND NONSUIT—REFUSAL TO SET ASIDE DISMISSAL NOT ABUSE OF DISCRETION—SPECIFIC PERFORMANCE.

Refusal of the court below to set aside a decree dismissing plaintiff's bill for the specific performance of an optional contract for the purchase of land, *held*, upon the record, which fails to show conclusively that he is entitled to the special relief sought, not an abuse of discretion.

Appeal from Wayne; Jayne (Ira W.), J. Submitted June 10, 1926. (Docket No. 50.) Decided April 1, 1927.

Bill by Edmund F. Lingemann against George P. Naoumson and another for specific performance of an optional land contract. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Joseph S. McDowell,* for plaintiff.

*Horace G. Williams,* for defendants.

STEERE, J. The bill of complaint in this case was filed May 28, 1925, for the purpose of compelling specific performance of a preliminary agreement, dated

[1]Appeal and Error, 5 C. J. §§ 2362, 2365; [2]Specific Performance, 36 Cyc. pp. 548, 549; [3]Appeal and Error, 4 C. J. § 2824.

February 25, 1925, in form of proposal and acceptance, for the purchase of 40 acres of land near Detroit, a copy of which is set out in the bill of complaint. An initiatory payment of $500 was made when the parties signed the agreement, which is still retained by defendants. No other payment has ever been made or tendered. A further sum of $6,500 was to be paid upon execution and delivery of a specified form of land contract, with the remaining $30,000 of the purchase price secured by said land contract, payable in semi-annual payments of $1,500 or more, including interest at 6% per annum. The agreement was prepared by plaintiff and contains the following provisions:

"You to furnish within thirty days herefrom an abstract of title, certified from the government to a date subsequent hereto, title to be furnished to be good and marketable in you, free and clear of any and all liens and incumbrances, except the present mortgage in the sum of about $2,600.

"In the event that your title be found to be unmerchantable, then I am to have the option of canceling this agreement and receiving back my deposit or requiring you to take the necessary steps to clear the title of its defects, within a reasonable time and not to exceed one year, and if this latter course be pursued, you to execute the land contract as specified herein.

"Deal to be closed on or before thirty days after delivery of abstract showing merchantable title in you.

"Possession of said land to be given to me on the execution of the land contract herein specified."

Soon thereafter an abstract was furnished plaintiff which apparently failed to show a clear merchantable title of record in defendants, they claiming, however, to be able to furnish a good marketable title as understood and agreed by the parties. It is said in plaintiff's brief:

"At no time have the defendants furnished or offered to furnish an abstract showing a good and mer-

chantable title in them as required by the terms of said preliminary agreement, in fact, the abstract presented did not contain the name of the defendants at all."

This is the gist of plaintiff's bill of complaint, which alleges that when defendants furnish such an abstract he is ready and willing to perform on his part. After the bill was filed a motion was made by defendants in the nature of a demurrer to dismiss it for various reasons set out at length in the motion, but directed to the underlying claim that the bill of complaint did not state a cause of action. This motion was denied when first presented but without prejudice to its renewal, and later seems to have been entertained by the judge who made final disposition of the case. Defendants filed a sworn answer to the bill of complaint stating their claims and denials at length, but reserving all questions raised by their previous motion to dismiss.

In denying and traversing the allegations in plaintiff's bill, defendants amongst other things aver that:

"They deny the allegations of paragraph three, but on the contrary aver that after plaintiff had received said abstract, plaintiff did nothing therewith until April 7, 1925; * * * that in the meantime defendants had notified plaintiff that by reason of his having taken no action within the thirty days stipulated in said agreement defendants considered said agreement breached by plaintiff; that notwithstanding that said abstract was extended on April 7th, it was not until April 29, 1925, that defendants were informed that plaintiff had any objections to said title, at which time plaintiff returned said abstract to defendants. That several times prior to the return of said abstract, defendants had notified plaintiff that owing to his failure to take any action within the thirty days specified in said agreement, defendants considered the contract breached by plaintiff and were negotiating with others for the sale of the property and that if their negotiations reached a climax before plaintiff was ready to make good under his agreement, defendants

would feel free to close with their prospective purchasers. And these defendants further say that said abstract showed an apparent break in title prior to the year 1869, but that from that time on the chain of title was good down to and including these defendants' deed of the premises, except for certain manifestly and inconsequential discrepancies and certain omissions made in extending the abstract, for which, as stated, plaintiff had assumed responsibility. That plaintiff categorically refused to go further with the deal in any way until defendants had proceeded to quiet the title as to all of the alleged deficiencies. * * * Furthermore, that these defendants on May 5, 1925, long after plaintiff in their opinion had forfeited his rights under said agreement and by his gross delay, offered in writing to plaintiff through his said agent, to take responsibility for the clearing of said title from said claimed defects provided plaintiff himself would live up to the terms of said agreement and proceed to execute the land contract stipulated for in said agreement in case such a course was to be followed. That it had come to defendants' notice that plaintiff was seeking to sell said agreement to others and giving different indications of inability to perform, and defendants so informed plaintiff and notified him as stated, that these defendants would not go to the time, trouble and expense of filing such a bill or of quieting or clearing the title unless plaintiff himself first performed his own agreement by entering into the land contract stipulated for, which proposition was categorically rejected by plaintiff by a written notice from his agent that he would not go ahead or do anything further until he had received an abstract showing a merchantable title. That believing in good faith that plaintiff himself had breached the agreement, first in permitting more than thirty days to elapse after receiving said abstract before taking any proceedings thereof, and then by refusing to execute his own agreement by entering into the land contract provided for in said agreement and giving defendants the time stipulated in which to clear said title, these defendants in good faith entered into an agreement with other parties for the sale of said premises and have in good faith contracted for the same and had done so prior to the filing of the bill of complaint herein * * *

whereby they have now put it out of their power to sell the place unless they shall be released by their new vendees."

The case progressed to a hearing in its regular order, was put on call, reached and called for hearing on December 7, 1925. Plaintiff not appearing in person or by counsel, his bill of complaint was dismissed on motion of defendants' counsel. Plaintiff thereafter moved to set aside the decree of dismissal, filing an affidavit alleging reasons why he was absent at the time of hearing and entry of decree. On December 9, 1925, the court fully heard counsel for both parties on the questions presented by the previous motions and pleadings, and declined to reinstate the case. No testimony was ever taken, and the hearing, so far as had, appears to have been on the files and records of the case, including the bill and answer.

Counsel for appellant devotes considerable of his brief to copies of claimed correspondence and other matters *dehors* the record, basing argument thereon. In disposing of a case brought to this court on appeal, we must be governed by the record as made and may not go outside of what is there shown. *In re Marx's Estate*, 201 Mich. 504.

No opinion was filed or reasons given by the court in denying plaintiff's motion to set aside the decree beyond a statement in the formal order that the decree "was fairly and properly entered upon sufficient cause." Plaintiff's bill was for specific performance of a preliminary agreement to enter into a formal land contract later, with deferred payments extending over a period of years. The only question presented for our decision is whether upon this record the court's refusal to set aside the decree dismissing plaintiff's bill was an abuse of discretion. The bill in itself is not overwhelmingly conclusive that plaintiff is entitled to the special relief of specific performance, which is not

237—Mich.—36.

strictly a matter of absolute right even though a legal right to damages for breach of contract might exist. In *Solomon* v. *Shewitz*, 185 Mich. 620 (3 A. L. R. 557), it is held (quoting from syllabus):

"Jurisdiction of a court of equity to decree specific performance of a land contract is not exercised as a strict matter of right in the party complainant: the question rests within the sound discretion of the court and the remedy may be granted or rejected according to the equities of each case. Specific performance may be refused although the defense is not such as to warrant rescission of the contract."

The agreement upon which this suit is planted is not so clear and unambiguous as to preclude construction. It was prepared by plaintiff and is in its nature an option contract as to him. The purchase price was $37,000. On its execution he made a deposit of $500, and by it defendants were required to furnish him "within thirty days herefrom an abstract of title certified," etc., which it was claimed was done. If he found the title unmerchantable, as he claimed was the case, he could exercise either of two options. He might cancel the agreement and receive back his deposit, or require defendants to perfect their title within a reasonable time, not to exceed one year. If he exercised the latter option defendants were to execute the proposed formal land contract. Whether he was to execute it is left to inference. His bill does not state what defects he found in the title, or whether it was in defendants' power to perfect it. The bill is obscure on that question, only equivocally alleging that they were, "or pretended to be," seized and possessed in fee simple of the described premises. Possibility of performance is not clearly shown, while the sworn answer, which may be taken of equal probative value as the bill, states that at the time the bill was filed defendants had sold the property and it was not within their power to perform. Courts of equity are loath to

impose and supervise the performance and execution of contracts freighted with contingencies or uncertainties, but leave the plaintiff to his remedy at law.    A careful reading of the pleadings and briefs of counsel in this suit fails to convince us that the court abused its judicial discretion.

The decree of the court below will stand affirmed, with costs to defendants, and without prejudice to any remedy at law plaintiff may claim.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.