LINSELL *v.* HALICKI.

1. SPECIFIC PERFORMANCE—FRAUD NOT ESTABLISHED.

In a suit for the specific performance of a contract for the exchange of real estate, evidence *held*, insufficient to establish the defense of fraud.

2. SAME—NOT A MATTER OF ABSOLUTE RIGHT.

Specific performance of an executory contract is not strictly a matter of absolute right, even though a legal right to damages for breach of contract might exist.

3. SAME—ADDRESSED TO SOUND DISCRETION OF COURT.

Applications invoking the power of the court to specifically enforce contracts are addressed to its sound and reasonable discretion, and are granted or rejected according to the circumstances of each case, and may be refused although the defense is not such as would warrant the rescission of the contract.

4. SAME—INADEQUACY OF CONSIDERATION MUST BE SUCH AS TO SHOCK CONSCIENCE OF COURT TO JUSTIFY DENIAL OF RELIEF SOUGHT.

To justify denial of specific performance because of inadequacy of consideration, the consideration must be so inadequate as to make the contract unfair and unreasonable and a shock to the conscience of the court..

5. SAME—INADEQUACY OF CONSIDERATION ESTABLISHED.

A court of equity is warranted in refusing to specifically enforce a contract for an exchange of real estate on the ground of inadequacy of consideration, where it appears that plaintiff on an investment of about $2,200 stood to realize a profit of more than $4,300.

Appeal from Wayne; Gilbert (Parm C.), J., presiding. Submitted June 21, 1927. (Docket No. 115.) Decided October 3, 1927.

Bill by Arthur L. Linsell and another against Victor

[1]Specific Performance, 36 Cyc. p. 784 (Anno); [2]Id., 36 Cyc. p. 548; [3]Id., 36 Cyc. pp. 548, 549; [4]Id., 36 Cyc. p. 609; [5]Id., 36 Cyc. p. 609; 14 L. R. A. (N. S.) 317; 25 R. C. L. 208; 3 R. C. L. Supp. 1412.

Halicki and others for specific performance of a land contract.    Defendants Halicki filed a cross-bill to set aside said contract on the ground of fraud.    From a decree transferring the cause to the law side of the court, plaintiffs appeal.    Affirmed.

*Anderson, Wilcox, Lacy & Lawson.* (*Ward H. Peck,* of counsel), for plaintiffs.

*Felix A. Doetsch,* for defendants.

SHARPE, C. J.    On July 11, 1926, plaintiff caused an advertisement to be published in a Detroit paper, offering for sale a vacant lot in the "Connors and Gratiot section, apartment site, first lot north of Gratiot.  *  *  *  Will consider four flat." The defendants Halicki were at that time the vendees in a contract with the other defendants for the purchase of a four-family flat on the southeast corner of Canton avenue and Benson street in Detroit at the price of $24,000, on which payments had been made reducing the unpaid principal to $17,486.29.    They read the advertisement, talked with plaintiff on the telephone, and afterwards called for him in their automobile and took him to their flat and afterwards to the vacant lot.    Mrs. Halicki remained in the car.    The men got out and walked around the lot.    Plaintiff stated that his price therefor was $85 a foot for 127 feet of frontage.    He told Halicki that he also owned the triangle adjoining, formed by Gratiot avenue running on an angle where it crossed Sanford street, having a frontage on Sanford of 35 feet.    The following day the Halickis again came to plaintiff's home and took him to their flat building.    They verbally agreed upon a deal, and went to a scrivener selected by Halicki, who prepared a preliminary agreement, which was signed by all the parties.    Abstracts were then ex-

changed, and the parties agreed to meet at the office of the scrivener on July 24th and close the deal. When the Linsells arrived, he was asked for his contract, and, on producing it, it was discovered that he and one Charlotte Schwartz were purchasing the vacant lots from Mary E. Campau for the sum of $5,250. He had in the meantime procured an assignment of the interest of Mrs. Schwartz, paying her on the basis of a value of $6,000 therefor. On observing the price Linsell was paying for the lots, Halicki stated that he "did not pay enough for them." The deal was not then closed, and after repeated efforts on the part of plaintiff met with refusals on the part of the Halickis, plaintiff filed the bill herein for specific performance. The Halickis answered, and by way of cross-bill sought cancellation on the ground that plaintiff had falsely and fraudulently misrepresented the location, size, and value of his lots, and also because it would be unconscionable for a court of equity to enforce the contract.

At the conclusion of the proofs the trial court found:

1. That the writing constituted a valid contract.

2. That "fraud as usually and ordinarily spoken of and fraud as we know it in the law, is not proven in this case."

He, however, declined to grant specific performance, and entered a decree transferring the cause to the law side of the court for recovery of such damages as plaintiff might prove that he had sustained. From this decree plaintiffs appeal.

We are in accord with the finding of the trial court that fraud was not proven. We are satisfied that plaintiff made no representations as to the location, size, or value of the vacant lots which were not true.

Specific performance of an executory contract "is not strictly a matter of absolute right, even though a legal right to damages for breach of contract might exist." *Lingemann* v. *Naoumson,* 237 Mich. 557.

"Applications invoking this power of the court are addressed to its sound and reasonable discretion, and are granted or rejected according to the circumstances of each case," and may be "refused, although the defense is not such as would warrant the rescission of the contract." *Solomon* v. *Shewitz,* 185 Mich. 620, 631 (3 A. L. R. 557).

One of the early cases in this court in which this doctrine was clearly stated is *Rust* v. *Conrad,* 47 Mich. 449 (41 Am. Rep. 720). Mr. Justice COOLEY in that case reviewed the authorities at length, and said at page 454:

"But when a party comes into equity it should be very plain that his claim is an equitable one. If the contract is unequal; if he has bought land at a price which is wholly inadequate; if he has obtained the assent of the other party to unreasonable provisions; if there are any indications of overreaching or unfairness on his part, the court will refuse to entertain his case, and turn him over to the usual remedies."

In *State Security & Realty Co.* v. *Shaffer,* 176 Mich. 639, while other questions are discussed, the denial of relief was placed squarely on the ground of inadequacy of consideration. The court said:

"So that, if the contract is specifically enforced, defendants would be compelled to transfer their property (be it worth little or much) to complainant practically for nothing."

Counsel for plaintiffs concede that the rule is as above stated, but insist that a careful examination of the cases will disclose "some inequitable circumstances such as fraud, mistake, deceit, double agency, or other similar cause, sufficient in itself to justify the court in denying enforcement of the contract."

The trend of these decisions and of other authorities which we have consulted lead to the conclusion that to deny specific performance for this reason, the consideration must be so inadequate as to make the con-

tract unfair and unreasonable and a shock to the conscience of the court.    36 Cyc. p. 609; 25 R. C. L. p. 208; note in 14 L. R. A. (N. S.) 317; *Randolph* v. *Quidnick Co.*, 135 U. S. 457 (10 Sup. Ct. 655).

This leads us to a consideration of the contract as made.    The unpaid balance on plaintiff's contract was $4,645.58.    After making payment to Charlotte Schwartz, his total investment therein was $1,354.42. He agreed to assign his interest therein and to pay the Halickis $846.69 in consideration of the assignment of their contract to him, on which there had been paid $6,513.11.    In other words, on an investment of about $2,200 he stood to realize a profit of more than $4,300.

Plaintiff's property consisted of lots 16 and 17 of the subdivision, with a frontage of 162 feet on Sanford street.    Lot 16 runs southerly 105.25 feet to a public alley, on which there is a frontage of 31.93 feet.    From this point the east line of these lots runs on an angle to Sanford avenue.    Some value doubtless attached to them owing to the fact that they were unrestricted.    But it is significant that plaintiff offered no proof tending to show that the lots had a greater value than that fixed in his contract of purchase.    On the other hand, we think the proof fairly shows that Halickis' flat is worth the price fixed in the contract therefor.    If, however, the Halickis attached an extravagant value to plaintiff's lots and were willing to speculate thereon, or had any particular reason for desiring to dispose of their property, the mere difference in values would not be controlling.    We are impressed that they were not actuated by any such considerations.    Such a profit as plaintiff will make, should specific performance be decreed, would certainly be unjustified by honesty and fair dealing.

The language of the contract itself is at least somewhat indicative that the Halickis assumed that both parties were parting with their property at a valuation

fixed by their payments thereon. It was in the nature of an offer on their part to sell their flat property to plaintiff for $26,000, payable as follows: "Down payment $846.69 cash and equity of $7,666.42" in plaintiff's lots. Plaintiff had informed himself of their interest in the flat building under their contract of purchase. He did not exhibit his contract to them, nor advise them concerning it. When it was stated in the contract that his equity in these lots was $7,666.42, and his contract when produced showed that he had paid thereon less than $2,300, the nature of the deal first became apparent to them. They declined to go on with it at the time, and, on reflection, tendered plaintiff the $50 he had paid and sought rescission.

While it is not the province of a court of equity to constitute itself a guardian to protect people who make improvident bargains, we are of the opinion that under the facts here presented we are warranted in declining to exercise the power existing in this court, on appeal, to decree specific performance of this contract.

The decree is affirmed, with costs to appellees.

BIRD, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.