WALTERS v. DURBIN.

1. Specific Performance—Deeds—Delay—Oil and Gas.

Specific performance of contract to deliver a mineral deed of interest in royalties in oil well *held*, properly refused, where grantee failed to specifically follow terms of escrow arrangement with respect thereto by intentionally delaying delivery of consideration until after change of conditions by bringing in of a gusher.

2. Same—Discretion of Court—Equity.

The remedy by specific performance is not a remedy of right, but it rests in the sound discretion of the court, and this discretion should not be exercised unless the case is clear, and should never be exercised where the moving party does not come into equity with clean hands.

Appeal from Montcalm; Hawley (Royal A.), J. Submitted April 8, 1936. (Docket No. 32, Calendar No. 38,848.) Decided September 2, 1936.

Bill by Harry B. Walters and James A. Straker against Otto Durbin and wife and State Bank of Crystal, for specific performance of contract to de-

liver a deed. Cross-bill by defendants Durbin against plaintiffs and defendant bank for cancellation and rescission of the deed. From decree for defendants Durbin on the cross-bill, plaintiffs appeal. Affirmed.

*Arthur W. Penny* (*T. R. McNamara,* of counsel), for plaintiffs.

*Eldred & Gemuend,* for defendants.

TOY, J. Plaintiffs filed their bill seeking specific performance of defendants to compel the delivery of a mineral deed to one-half interest of an eighth oil and mineral royalty reservation in a lease of 40 acres of land, owned by defendants Durbin in Crystal township, Montcalm county, Michigan, the said mineral deed being held in escrow by the defendant bank.

Defendants Durbin filed their answer to the bill denying plaintiffs' right to specific performance and filed their cross-bill of complaint seeking cancellation and rescission of the mineral deed on grounds of fraud and misrepresentation. From a decree for defendants Durbin, plaintiffs appeal.

Defendants Durbin were the owners by the entireties of the 40-acre tract in question. They had their residence in Flint, Michigan, where Mr. Durbin worked in an automobile factory.

Defendants Durbin had leased the oil, gas and mineral rights of this tract of land to one McCollister, reserving to themselves the one-eighth royalty interest. The plaintiff Walters had secured an assignment of McCollister's lease on this 40 acres, and had erected a rig thereon for the purpose of drilling a well, but because of inability to finance the same, lost the lease, which was taken over by

one Martin, who, with others, procured the Leonard Drilling Company to drill a well thereon. This company commenced drilling in November, 1934.

On March 16, 1935, Mr. Durbin visited the well and saw a "little showing" of oil and gas, apparently from the Traverse sands. On March 19th, after further drilling, a definite showing of oil was found. On that date there was approximately 600 feet of oil standing from the bottom of the well. No water was had on that date, but on the 20th, after drilling a few additional feet, water did appear.

The owners of the well were uncertain whether the water was coming from above or below the oil-producing strata, and stopped further drilling until after an analysis could be made by chemists to determine where the water originated. The analysis was completed shortly before March 28th, and determined the water to be above the oil sand. Drilling was thereupon resumed on March 28th, and after drilling less than a foot, the well became an active and violent gusher of oil.

The evening of March 19th, plaintiffs, who lived in Mt. Pleasant, were informed of the showing of oil in the Durbin well and the following morning at about 8 o'clock arrived at the well, and saw bailing tests being made thereat and saw bailers bailing oil therefrom.

Both plaintiffs are experienced "oil" men. Plaintiff Walters stated that his business was that of an "oil operator," trading in leases and royalties and promoting wells; that he was engaged in that business in Oklahoma, Texas and Michigan, and that he had worked at it with his father since he was a boy. Plaintiff Straker had been engaged in the oil business for about 15 years, out of which 12 years had been spent in drilling wells. Such activities had

been carried on in Oklahoma, Texas, Ohio and Michigan.

Plaintiffs were evidently impressed by what they saw at the well on the 20th, for after leaving the well, they went to the defendant bank at Crystal, and secured from an employee of the bank the address of defendants Durbin in Flint. They then proceeded to Flint, arriving at Durbin's home that evening. Plaintiff Walters went into the home, while plaintiff Straker remained outside. Walters there sought to purchase from defendants all, or a portion of their royalty interest, stating to them that he was acting for Straker.

After much dickering, the defendants Durbin agreed to the sale of an interest of their royalties.

Early the following morning Walters and Mr. Durbin came before a notary public in Flint, and there in the presence of Mr. Durbin, Walters dictated the mineral deed here in controversy, which Mr. Durbin read and executed in the presence of the notary. Later that morning Mrs. Durbin came before the notary and executed the instrument, but without reading it. The deed ran from the Durbins to plaintiff Straker.

At the time Mr. Durbin executed the mineral deed, he signed a writing to the cashier of defendant bank, prepared by plaintiff Walters, as follows:

"EARL FROST.

"Inclosed you will find mineral deed in favor of James A. Straker of Mt. Pleasant.

"Draw draft on him for $1,000 for one-half interest in northwest of northeast section 11, Crystal township, on his bank at Mt. Pleasant.

"I intend to be up this week-end and will see you then.

"(Signed): OTTO DURBIN."

He gave this letter of instructions together with the mineral deed to Walters that morning to carry to Mr. Frost, the bank cashier, at Crystal, which is about 85 miles from Flint.

Walters did not go directly from Flint to Crystal, but arrived there the following day, March 22d.

At that time Walters delivered the deed and letter of instructions to Mr. Frost, the cashier of defendant bank. He instructed Mr. Frost to draw a time draft on plaintiff Straker at Straker's bank—the Isabella County State Bank, Mt. Pleasant, Michigan,—and to make it payable a week thereafter. He instructed Frost to inclose the time draft with an abstract of the property.

Mr. Frost drew a draft on Straker at Mt. Pleasant, Michigan, reading, "On March 27, 1935, pay to the order of State Bank of Crystal, Michigan, $1,000." He inclosed the abstract and a letter as follows:

"Crystal, Michigan
"March 22, 1935.

"Isabella County State Bank,
"Mt. Pleasant, Michigan.

"*Gentlemen:* We are inclosing herewith mineral deed from Otto and Goldie Durbin to James A. Straker of your city with draft for $1,000 attached. Draft is payable on March 27th. Abstract of title to the property is also inclosed for the inspection of Mr. Straker. Will you kindly present this draft for payment and return the abstract to us with your remittance?

"Very truly yours,
"Earl J. Frost, Cashier."

Mr. Frost deposited this letter with its inclosure in the mail at Crystal. The letter was postmarked "March 23, 1935."

On March 23d, Mr. Durbin came to the bank at Crystal and instructed the cashier not to send the draft, abstract and mineral deed. He wrote and signed the following letter:

"Crystal, March 23d, 1935.

"Mr. Earl Frost: Since coming to Crystal I have found things different than was represented to me in Flint by Harry Walters and James Straker and I direct you not to send the mineral deed to Mt. Pleasant but hold it for me.

"OTTO DURBIN."

Mr. Frost upon receipt thereof and acting under instructions from Mr. Durbin, withdrew the letter, with its inclosures, from the mail.

The plaintiff Straker went to his bank in Mt. Pleasant daily thereafter to ascertain if the draft, abstract and deed had arrived. On March 26th, the plaintiffs went to Crystal and saw Mr. Frost, at the bank, who informed them of Mr. Durbin's action and his resultant withdrawal of the letter from the mails. Nothing further was done by plaintiffs until after the gusher "came in."

On March 28th, immediately after the gusher had been drilled, plaintiff Straker deposited a certified check with the Isabella County State Bank at Mt. Pleasant payable as follows:

"Pay to the order of Otto Durbin and Goldie Durbin or State Bank of Crystal, one thousand dollars, $1,000."

The bank then sent the following telegram:

"Mt. Pleasant, Michigan, March 28, 1935.
"To State Bank of Crystal, Crystal, Michigan (Montcalm county):
"James A. Straker has deposited one thousand dollars to be surrendered upon delivery of mineral

deed executed by Otto and Goldie Durbin deposited with you March 22d to be forwarded to us.

"Isabella County State Bank."

No response thereto was made by defendants. Plaintiffs then filed this bill seeking specific performance from the Durbins and the bank. Walters, as one of the plaintiffs became a party in interest by reason of an assignment of one-half of Straker's interest.

The bank answered admitting its position to be that of an escrow agent and averring its willingness to deliver the mineral deed as ordered by the court. By stipulation of the parties, the papers in possession of the bank were deposited with the clerk of the circuit court.

It is claimed by defendants Durbin in their answer and cross-bill, that Walters represented to them that the well was likely to be a dry hole; that the showing at the well on that day (20th) was the same as it was when Mr. Durbin had been at the well (March 16th); that not one in a hundred wild-cat wells are producers; that even if oil were discovered it would be a year or more before the Durbins could market their oil; that the oil could not be marketed until a pipe line could be laid to Mt. Pleasant; and that defendants would receive $50 an acre for a half interest in their royalties on 20 acres. It is claimed these representations were false and fraudulent. Defendants further claim that Walters concealed from them the true condition of the oil well at that time, and intentionally led them to believe that there was no different showing of oil and gas on that day (March 20th) than there was when Mr. Durbin visited the well (March 16th).

They contend that plaintiffs were guilty of fraud in the execution of the mineral deed in that the

instrument as prepared and signed called for one-half of Durbins' interest in 40 acres, whereas they charge that it had been agreed and contemplated that only one-half of Durbins' royalty interest in 20 acres would be transferred.

It is the further claim of the Durbins that plaintiffs did not comply with the terms of the escrow agreement and are therefore not entitled to a delivery of the mineral deed; that Walters acting for Straker, without authority instructed the cashier of defendant bank to draw a *time* draft and to send the deed and abstract with such draft to Straker's bank in Mt. Pleasant; and further, that plaintiffs did not make the $1,000 payment on Saturday, March 23, 1935, as had been agreed between them.

The learned circuit judge found the plaintiffs to have been guilty of fraud and misrepresentation, and refused the remedy of specific performance but decreed a cancellation of the mineral deed.

It is unnecessary to pass upon the questions raised by appellants as to whether fraudulent representations were made by plaintiffs to defendants Durbin to induce them to execute the mineral deed; nor is it essential to review the question as to whether the deed itself was fraudulently prepared by plaintiffs.

We are convinced from the record that plaintiffs overstepped and overreached in their conduct after the mineral deed and letter of instructions had been given to Walters by the Durbins for delivery to the defendant bank.

The mineral deed and letter of instructions were given by the Durbins to plaintiff Walters at Flint for delivery to the bank at Crystal. Mr. Walters testified:

"Mr. Durbin told me he would trust me with the papers to take them to Crystal."

But Walters was not true to his trust. Instead of going directly to the bank at Crystal, he permitted a day to intervene. It had been agreed that the draft should be drawn and sent to Mt. Pleasant so that the $1,000 payment would be at the bank in Crystal that week end (March 23d), when Mr. Durbin would call for it. But Walters exceeded his instructions. Not only did he delay a day in delivering the papers, thereby making it impossible to have a draft upon the bank at Mt. Pleasant paid and returned in the specified time, but he issued further instructions to the cashier of the Crystal bank, not authorized by the Durbins. He informed the cashier of that bank that a draft should be drawn upon Straker at the bank in Mt. Pleasant payable a sufficient time ahead so that time could be had to examine the abstract of title to the property, and should be dated at least a week ahead. Acting under these instructions, the cashier drew a time draft on Straker as hereinbefore set forth. He inclosed it with the abstract of title and placed it in the mails.

It is a significant circumstance that drilling at the Durbin well had then ceased, and that the owners of the well were awaiting a chemical analysis for a determination of whether further drilling should be undertaken. If the analysis showed the water formed in the well to be from the bottom, then further drilling would be of little value, but if the analysis determined the water to be from above the oil formation, all indications would then point to the finding of a producing well, and further drilling would enhance the chance of its discovery. It is fair to infer that plaintiffs were acutely aware of this condition. They were experienced "oil" men. They had, through contact with drillers and others familiar with the Durbin well kept in close contact with developments at the well. They had been upon

the scene and observed for themselves the "show" of gas and oil.

We have no doubt but that they were awaiting further developments at the well before parting with their money to the Durbins. On March 26th, plaintiffs went to Crystal and there learned of Durbins' action in withdrawing the deed and abstract from the mails—but they did nothing. No hurried trip now to confer with the Durbins! They, like the owners of the well were waiting.

Their course of action was well outlined by the learned chancellor in his opinion:

"After March 22d, plaintiffs did nothing until the Durbin well was brought in as a gusher at a depth of 3,197½ feet about 11 o'clock in the forenoon of March 28th. On that date at about three o'clock in the afternoon the plaintiffs entered the Isabella County State Bank and asked the assistant cashier, Mr. Graham, if they could accept a deposit in the form of a certified check payable to the order of the State Bank of Crystal, or Mr. and Mrs. Otto Durbin, in the sum of $1,000 and to send a wire to the State Bank at Crystal to the effect that the deposit had been made in payment of a draft that had been drawn on Mr. Straker. The cashier accepted the deposit and sent a telegram to the Crystal bank to that effect. It is worthy of note that after the well came in it didn't require four days, two days each way, to get the money from Mt. Pleasant to Crystal, as it had been represented by plaintiff Walters to the cashier of the Crystal bank, nor was it necessary to have an abstract of title or to have it examined before depositing the cash. The inference is not greatly remote that if the Durbin well had proven to be a 'dry hole,' or a nonproducer of gas or oil, plaintiff Straker would have washed his hands of the whole deal. Another plausible inference, even less remote, is that the device of a time draft was resorted to for the very purpose of

awaiting the chemical test of the water from the well which would determine whether or not it was a producer of oil or salt water. This deposit was not accepted by the Durbins. The time draft with the deed attached still remains in escrow in the Crystal bank pending the result of this suit, which was commenced in this court on April 2, 1935.

"The bill of complaint is in the nature of a bill for specific performance. The circumstances are such, as shown by the proofs and found by the court, that no court of equity, a court of conscience, could enter a decree in favor of the plaintiffs."

The artifice, cunning and overreachment of plaintiffs availed them nothing except to work a nonperformance of the escrow agreement upon their part.

They did not show good faith in their dealings with the Durbins, nor a readiness and willingness to perform, until after the property showed an extraordinary increase in value.

In *Smith* v. *Stewart*, 245 Mich. 452, Mr. Justice Fead, speaking for the court, said of one seeking the remedy of specific performance:

"He must at least demonstrate ability, readiness, and willingness to perform."

In that opinion, also, the court approved the rule as stated in *Lake Erie Land Co.* v. *Chilinski*, 197 Mich. 214, as follows:

"Remedy by specific performance is not a remedy of right. It rests in the sound discretion of the court. That discretion should not be exercised unless the case is clear. It should never be exercised where the moving party does not come into court with clean hands, with equities in his favor."

See *McClellan* v. *Moore*, 272 Mich. 630; *Denby* v. *Dorman*, 261 Mich. 500.

We say here, as we said in *St. Pierre* v. *Masson,* 243 Mich. 60:

"Conditions changed in relation to this property. It increased in value. Plaintiffs parted with nothing. They did not comply with the contract in accordance with its terms. Specific performance is not a remedy of right, but rests in the sound discretion of the court. *Reo Motor Car Co.* v. *Young,* 209 Mich. 578; *Krause* v. *Hoffmann,* 239 Mich. 348. We think under the circumstances, specific performance was properly refused."

See *Johnston Realty & Investment Co.* v. *Grosvenor,* 241 Mich. 321, and *Linsell* v. *Halicki,* 240 Mich. 483.

The decree is affirmed, with costs to defendants Durbin.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred. POTTER, J., took no part in this decision.